624 P.2d 866

Rosemarie NOBLE, Appellant,

v.

NATIONAL AMERICAN LIFE INSUR-
ANCE COMPANY, Appellee.

No. 14531–PR.

Supreme Court of Arizona,
In Banc.

Feb. 17, 1981.

Cox & Cox by Randall R. Douglas, Phoe-
nix, for appellant.

Fennemore, Craig, von Ammon & Udall
by Ruth V. McGregor, Stacy Olliphant,
Phoenix, for appellee.

Hofmann, Salcito & Stevens by James W.
Fritz, Phoenix, for amici curiae State Farm.

Jones, Teilborg, Sanders, Haga & Parks,
by William R. Jones, Jr., Phoenix, for amici
curiae National Association/American In-
surance.

Snell & Wilmer by Warren E. Platt, Rich-
ard K. Mahrle, Phoenix, for amici curiae
American Council of Life Ins./The Health
Insurance Association of America.

Miller, Pitt & Feldman by Stanley G.
Feldman, Nanette M. Warner, Tucson, for
amici curiae Arizona Trial Lawyers Associa-
tion.

HOLOHAN, Vice Chief Justice.

Appellant, Rosemarie Noble, purchased a
health insurance policy from appellee, Na-
tional American Life Insurance Company.
Subsequently, she had surgery which result-
ed in surgical and hospital expenses of
$1,503.53. A claim under the health insur-
ance policy was submitted to the insurance
company, but it refused to pay the claim.
Appellant filed an action in the superior
court alleging in count I, breach of contract

and in count II, the tort of bad faith refusal to pay an insurance claim.

The superior court granted the defendant insurance company's motion to dismiss count II for failure to state a claim for relief. The superior court, pursuant to Rule 54(b), Arizona Rules of Civil Procedure, entered judgment dismissing count II. A timely appeal was filed.[1] The court of appeals reversed the judgment of the superior court. *Noble v. National American Life Insurance Co.*, 128 Ariz. 196, 624 P.2d 874 (App.1979). We accepted review. Opinion of the court of appeals is vacated. The judgment of the superior court is reversed.

The issue presented is whether Arizona recognizes as a tort an insurer's bad faith refusal to pay a valid claim submitted by its insured under a policy of insurance.

While there are no Arizona cases precisely on point,[2] a number of other jurisdictions recognize the existence of tort liability for the willful refusal of an insurance company to pay a valid claim by its insured. *See Santilli v. State Farm Life Insurance Co.*, (1977), 278 Or. 53, 562 P.2d 965, n.4, and cases cited therein.[3] In some instances the tort has been created by statute and in others the liability has been developed by case decision.

The leading case on this issue is the California Supreme Court's decision in *Gruenberg v. Aetna Insurance Co.*, 9 Cal.3d 566, 510 P.2d 1032, 108 Cal.Rptr. 480 (1973). In *Gruenberg* the court extended the duty of good faith owed by an insurance company to settle the claims of third parties against an insured to include a duty of acting in good faith in paying the valid claims of the insured. The Supreme Court of California stated:

It is manifest that a common legal principle underlies all of the foregoing decisions; namely, that in every insurance contract there is an implied covenant of good faith and fair dealing. The duty to so act is imminent in the contract whether the company is attending to the claims of third persons against the insured or the claims of the insured itself. Accordingly, when the insurer unreasonably and in bad faith withholds payment of the claim of its insured, it is subject to liability in tort. *Gruenberg, supra*, 9 Cal.3d at 575, 510 P.2d at 1038, 108 Cal. Rptr. at 486.

A few jurisdictions have criticized the *Gruenberg* rationale and have refused to follow it. *See Santilli v. State Farm Life Insurance Co., supra; Lawton v. Great Southwest Fire Insurance Co.*, 118 N.H. 607, 392 A.2d 576, 580–81 (1978). It appears, however, that a majority of jurisdictions considering the issue have followed the decision in *Gruenberg*.

We are persuaded that there are sound reasons for recognizing the rule announced in *Gruenberg*. The special nature of an insurance contract has been recognized by courts and legislatures for many years. A whole body of case and statutory law has been developed to regulate the relationship between insurer and insured. An insurance policy is not obtained for commercial advantage; it is obtained as protection against calamity. *Egan v. Mutual of Omaha Insurance Co.*, 24 Cal.3d 809, 820, 598 P.2d 452, 457, 157 Cal.Rptr. 482, 487 (1979). In securing the reasonable expectations of the insured under the insurance policy there is usually an unequal bargaining position between the insured and the insurance company. *Craft v. Economy Fire & Casualty Co.*, 572 F.2d 565, 569 (7th Cir. 1978). When the loss insured against occurs the insured expects to have the protec-

1. Count I was dismissed pursuant to stipulation of the parties soon after plaintiff filed this appeal.

2. In the only Arizona case mentioning this issue, the court of appeals implied in dicta that they *might* recognize the tort of insurer bad faith refusal to pay reasonable claims. *John Hancock Mutual Life Insurance Co. v. McNeill*, 27 Ariz.App. 502, 508, 556 P.2d 803, 809 (1976).

3. *See also Corwin Chrysler-Plymouth, Inc. v. Westchester Fire Insurance Co.*, 279 N.W.2d 638, 643 (N.D.1979); *Christian v. American Home Assurance Co.*, 577 P.2d 899, 904 (Okl. 1978).

tion provided by his insurance. Often the insured is in an especially vulnerable economic position when such a casualty loss occurs. The whole purpose of insurance is defeated if an insurance company can refuse or fail, without justification, to pay a valid claim. We have determined that it is reasonable to conclude that there is a legal duty implied in an insurance contract that the insurance company must act in good faith in dealing with its insured on a claim, and a violation of that duty of good faith is a tort.

■ A final point raised by the parties and *Amici* is that the elements of this tort are not really defined. We disagree. Probably the best exposition on this point is the Wisconsin Supreme Court's decision in *Anderson v. Continental Insurance Co.*, 85 Wis.2d 675, 271 N.W.2d 368 (1978). The *Anderson* Court states:

> To show a claim for bad faith, a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim. It is apparent, then, that the tort of bad faith is an intentional one.
>
> \*   \*   \*   \*   \*   \*
>
> The tort of bad faith can be alleged only if the facts pleaded would, on the basis of an objective standard, show the absence of a reasonable basis for denying the claim, i. e., would a reasonable insurer under the circumstances have denied or delayed payment of the claim under the facts and circumstances. 271 N.W.2d at 376–77.

■ Under the *Anderson* standard an insurance company may still challenge claims which are fairly debatable. The tort of bad faith arises when the insurance company intentionally denies, fails to process or pay a claim without a reasonable basis for such action.

Although the allegations of count II of the complaint leave much to be desired, the plaintiff should be allowed to amend the complaint to set forth, if possible, sufficient ultimate facts to state a claim. It is evident, however, that the superior court dismissed count II because it believed that Arizona did not recognize the tort of bad faith failure or refusal to pay a first party insurance claim. The judgment of the superior court dismissing count II is reversed with directions to reinstate count II of the complaint and proceed consistent with the views expressed in this opinion.

CAMERON and GORDON, JJ., concur.

STRUCKMEYER, Chief Justice, dissenting.

Appellant, Rosemarie Noble, brought this action alleging in one count of her complaint a breach of contract, and in a second count a breach of implied warranty of good faith and fair dealing by her insurer, the National American Life Insurance Company. After a voluntary dismissal of count one, leaving only count two, the Superior Court dismissed appellant's complaint for failure to state a claim upon which relief could be granted. Both parties to this action urge this Court to decide whether Arizona recognizes a claim in tort for an insurer's refusal to deal fairly and in good faith with its insured. It is my opinion that the issue is not properly presented for decision because appellant's complaint did not allege sufficient facts to state a claim of an insurer's refusal to deal fairly and in good faith. I also believe that the creation of a cause of action where none previously existed is best left to the legislative branch of government.

We said in *Phoenix Professional Hockey Club, Inc. v. Hirmer*, 108 Ariz. 482, 483, 502 P.2d 164 (1972): "the existence of a duty to the plaintiff is a prerequisite to tort liability." But the duty, the breach of which gives rise to a tort claim, must be a general duty imposed by law apart from a contract rather than a contractual duty imposed by consent. See, e. g., *Felder v. Great Am. Ins. Co.*, 260 F.Supp. 575, 578 (D.S.C.1966). If the duty is private, created by the terms of a contract, no remedy in tort is available for its breach.

"The relation between the remedies in contract and tort presents a very confusing field, still in process of development, in which few courts have made any attempt to chart a path. The earliest cases arising in the borderland were those of negligence on the part of persons engaged in a public trade or calling, as where a ferryman overloaded his boat and drowned the plaintiff's horses, or a smith lamed a horse while shoeing it. The action was on the case, and the underlying theory seems to have been at first one of pure tort. In the course of time the defendant's 'assumpsit,' or undertaking, came to be regarded as the real foundation of the action; and with the development of the action of assumpsit and the idea of consideration, the obligation of the contract became recognized, as in itself a basis of liability. The tort remedy survived, however, in the situations where it had already existed; and the more or less inevitable efforts of lawyers to turn every breach of contract into a tort forced the English courts to find some line of demarcation." Prosser, The Law of Torts (4th ed. 1971) § 92, p. 614. (Footnotes omitted.)

Heretofore, only if a duty is owed independent of the contract, although arising from a contractual relationship and imposed by law on the relationship, has a tort remedy been available. See *McClure v. Johnson*, 50 Ariz. 76, 69 P.2d 573 (1937).

Appellant alleges in this case that appellee breached its "duty to pay the just claims of its insureds and [the] implied warranty of good faith and fair dealing." Appellant's position is that by simply refusing to pay the claim of its insured, appellee breached a general duty of good faith and fair dealing imposed by law upon all insurers.

The general duty to exercise good faith and fair dealing is implied by law in all contracts. *Beaugureau v. Beaugureau*, 11 Ariz.App. 234, 236, 463 P.2d 540 (1970). A duty implied by law is as much a part of that contract as though expressly stated in it, but the remedy for its breach is an action on the contract itself. *Zancanaro v. Cross*, 85 Ariz. 394, 339 P.2d 746 (1959); *Beaugureau v. Beaugureau*, supra.

While there are situations in which a breach of contract may also be the predicate for claims in tort, see Prosser, supra, the facts do not support such a claim here. In *Taylor v. Herbold*, 94 Idaho 133, 483 P.2d 664 (1971), the court discussed the circumstances giving rise to claims in both tort and contract. It was pointed out that as a predicate for a tort, the conduct must amount to the breach of a duty apart from the mere nonperformance of the contract. To further distinguish the two actions, the court quoted *Atlantic & P. Railway Co. v. Laird*, 164 U.S. 393, 17 S.Ct. 120, 41 L.Ed. 485 (1896):

> " 'The distinction is this: If the cause of complaint be for an act of omission or nonfeasance, which, without proof of a contract to do what has been left undone, would not give rise to any cause of action (because no duty apart from contract to do what is complained of exists), then the action is founded upon contract, and not upon tort.' " *Taylor v. Herbold*, supra at 669.

The facts alleged in appellant's complaint show that the insurance policy provided coverage for surgical and hospitalization expenses but that the appellee rejected appellant's claim, seemingly paying it after suit was brought. Appellant then asserted, "[b]ecause of defendant's breach of its duty to pay the just claims of its insureds and implied warranty of good faith and fair dealing" appellant suffered various losses and injuries. The complaint, while alleging a breach of contract for nonpayment, fails to allege any additional facts from which it could be inferred that the breach was predicated upon wrongful conduct independent of the breach itself. There are consequently no facts pleaded which will support a claim in tort.

In *Findley v. Time Ins. Co.*, 264 Ark. 647, 573 S.W.2d 908 (1978), plaintiff brought an action based on an insurer's refusal to pay a hospital and medical expense claim. The complaint set forth several particulars, in-

cluding the insurer's failure to explain the reasons for refusing the claim and the insurer's misrepresentation of the terms of the policy by stating the charges were not covered under the policy. In holding that the complaint did not state a cause of action in tort against the insurer for bad faith dealing, the court said:

> "In conclusion, we do not reject the possibility that an insurer may be liable in tort, as in *Fletcher* [*v. Western Nat. Life Ins. Co.,* 10 Cal.App.3d 376, 89 Cal.Rptr. 78, 47 A.L.R.3d 286 (1970)] and *Gruenberg* [*v. Aetna Insurance Co.,* 9 Cal.3d 566, 510 P.2d 1032, 108 Cal.Rptr. 480 (1973)], upon a showing that, without a good faith defense to the insured's claim, it actively engaged in dishonest, malicious, or oppressive conduct in order to avoid its liability. Such questions we leave to the future. All that we now hold is that paragraph 12 of the present complaint does not state facts sufficient to constitute a cause of action in tort." 573 S.W.2d at 911–912.

In effect, the Arkansas court found that a mere denial of coverage, absent allegations that the insurer engaged in affirmative conduct which would constitute bad faith or fraud, does not create liability.

I reach the same conclusion here, believing that even under the most liberal interpretation of the law the second count of the complaint does not allege sufficient facts to constitute a cause of action in tort against the insurer.

Notwithstanding the obvious infirmities of appellant's pleading, the majority of this Court point to the opinion in *Gruenberg v. Aetna Insurance Company,* 9 Cal.3d 566, 510 P.2d 1032, 108 Cal.Rptr. 480 (1973).

In *Gruenberg v. Aetna,* the California Supreme Court said:

> "Thus in *Comunale* and *Crisci* we made it clear that '[l]iability is imposed [on the insurer] not for bad faith breach of contract but for failure to meet the duty to accept reasonable settlements, a duty included within the implied covenant of good faith and fair dealing.' (*Crisci, supra,* 66 Cal.2d [425] at p. 430, 58 Cal.Rptr.

[13] at p. 17, 426 P.2d [173] at p. 177.) In those two cases, we considered the duty of the insurer to act in good faith and fairly in handling the claims of third persons against the insured, described as a 'duty to accept reasonable settlements.'; in the case before us we consider the duty of an insurer to act in good faith and fairly in handling the claim of an insured, namely a duty not to withhold unreasonably payments due under a policy. These are merely two different aspects of the same duty." 510 P.2d at 1037.

Whatever may be the merits of this specious analogy that the two cases present "merely two aspects of the same duty," there is a clear distinction which led the Supreme Court of Oregon, in *Santilli v. State Farm Life Ins. Co.,* 278 Or. 53, 562 P.2d 965, 969 (1977), to observe:

> "[T]here is a distinct difference between liability insurance and other types of policies which should not be overlooked.
>
> When an insured purchases liability insurance, he relinquishes his right to control any litigation brought against him for conduct which is covered under the policy, and he loses his right to negotiate a settlement with the opposing party. Moreover, when the settlement value of a case approaches the policy limits, it becomes increasingly more tempting for the insurer to gamble on the results of litigation, for in refusing to settle under such circumstances, the insurer stands to lose little and gain much. The insured, however, has a strong interest in settlement so as to avoid a judgment in excess of his coverage. Because of his conflict, courts have held insurers to a high duty of good faith and fair dealings when conducting settlement negotiations on behalf of their insured.
>
> Such considerations are not applicable outside the field of liability insurance. In cases involving the insurer's duty to pay under policies for theft, fire, health, disability or life insurance, the unique relationship which gives rise to the special duty of liability insurers to attempt to settle within their policy limits does not arise. The insured, or his beneficiary is

not subject to the imposition of excess liability, and his rights and responsibilities are limited to those set forth in his contract."

A year later, in *Farris v. U. S. Fidelity and Guaranty Co.*, 284 Or. 453, 587 P.2d 1015, 1021 (1978), a case in which the plaintiffs were sued by a business competitor for engaging in unfair business practices and the insurer denied coverage under a general liability insurance policy, the Oregon court concluded that it is the fiduciary position of the insurer when the insurer represents the insured in litigation which gives rise to the duty to use good faith. It was held that the insurer's failure to undertake representation of insureds so that they were required to represent themselves could only be a breach of contract.

See also, *Lawton v. Great Southwest Fire Ins. Co.*, 118 N.H. 607, 392 A.2d 576, 581 (1978), where the court held on similar reasoning that:

"We therefore find no basis for extending the duty recognized in those cases to the first-party claim. We hold that allegations of an insurer's wrongful refusal or delay to settle a first-party claim do not state a cause of action in tort." (Citations omitted.)

And it had been held that even a malicious or bad faith motive in breaching a contract does not convert a contract action into a tort action. See, e. g., *Wild v. Rarig*, 302 Minn. 419, 234 N.W.2d 775, 790 (1975).

By Ch. 170, § 2, Laws 1976, as amended by Laws 1978, Ch. 84, § 2 (codified as A.R.S. § 12–341.01(A)), the Arizona Legislature has provided that in contested actions arising out of contract the court may award the successful party reasonable attorney's fees, and by subsec. C thereof, reasonable attorney's fees shall be awarded by the court in any contested action upon clear and convincing evidence that the claim or defense "constitutes harassment, is groundless and not made in good faith." Plainly the Legislature is not unaware of bad faith motives in breaching a contract and has provided a remedy by which a party may recover his expenses if compelled to litigate. A change in the law which the majority impatiently press forward to make should more properly emanate from the Legislature, where a thorough assessment and evaluation of necessity and the social and economic implications may be considered.[1]

I would affirm the judgment of the Superior Court.

HAYS, Justice, dissenting.

I concur in the dissent.

---

1. For a recent case listing the existing cases in the United States on both sides of this matter and summarizing the reasons usually advanced for adopting or rejecting *Gruenberg v. Aetna Insurance Company*, see *Spencer v. Aetna Life and Cas. Ins. Co.*, 227 Kan. 914, 611 P.2d 149 (1980).