17 P.3d 95

Estevan LEAL and Denise Leal, husband and wife, Plaintiffs–Appellants,

v.

ALLSTATE INSURANCE COMPANY, a foreign corporation, acting in its capacity as an insurance company, and as a law firm doing business as Sorenson & Associates; Wendi A. Sorenson and John Ishakiwa, dba Sorenson & Associates, an Arizona law firm, Defendants–Appellees.

No. 1 CA–CV 00–0041.

Court of Appeals of Arizona, Division 1, Department B.

Dec. 21, 2000.

Review Denied May 23, 2001.

Thur & O'Sullivan, P.C., by Calvin C. Thur, Roger O'Sullivan, Scottsdale, Attorneys for Plaintiffs–Appellants.

Steptoe & Johnson, L.L.P., by Floyd P. Bienstock, Bennett Evan Cooper, Phoenix, Attorneys for Allstate Insurance Company.

## OPINION

TOCI, Presiding Judge.

¶ 1 Estevan and Denise Leal (the "Leals"), third parties who were injured by the negligence of Allstate Insurance Company's ("Allstate") insured, appeal from the dismissal of their claims against Allstate for breach of an implied duty of good faith and fair dealing. The Leals allege that Allstate voluntarily assumed such a duty in adjusting their claims against its insured by pledging that it would consider the Leals to be customers entitled to "quality customer service." Alternatively, the Leals argue that Allstate's duty to them is implied by Arizona's mandatory vehicle liability insurance statutes. Because we find no duty under either theory, we affirm the trial court.

## I. FACTUAL BACKGROUND

¶ 2 On appeal from the grant of a motion to dismiss, we accept as true the complaint's allegations and affirm dismissal only if the plaintiffs are not entitled to relief under any facts susceptible of proof. *Mohave Disposal, Inc. v. City of Kingman*, 186 Ariz. 343, 346, 922 P.2d 308, 311 (1996).

¶ 3 In April 1996, Estevan Leal was rear-ended by Allstate's insured. That day, an Allstate adjuster told Estevan that he would not need an attorney because Allstate would treat him fairly and would work with him to settle his claim.

¶ 4 Several days later, Allstate wrote the Leals and asked Estevan to authorize release of medical and employment records. The letter stated that Allstate considered "anyone who has been involved in an accident with one of our policyholders an Allstate 'customer,' who is entitled to quality customer service." Enclosed with the letter was Allstate's "Customer Service Pledge," with the company logo and statement "You're in good hands with Allstate" at the top. The pledge states:

> Because you have been involved in an accident with an Allstate policyholder, we consider you our customer and will provide you with quality customer service.... We promise you the following:
>
> 1) We will fully explain the process, take the time to answer all questions ... that you may have, and keep you informed throughout the claim process.

2) We will conduct a quick, fair investigation of the facts in your case.

3) To the extent that our policyholder was at fault in the accident:

We will assist you in providing for the repair of your vehicle . . . ;

We will help you determine if you are eligible to receive compensation for any injuries you may have suffered; and

We will discuss fair payment for your claim when you feel you are ready.

Your claim representative is dedicated to carrying out this Pledge.

The Leals provided Allstate with various documents and signed the release authorizations.

¶ 5 About a month later, Allstate made a settlement offer that provided no compensation for future medical bills and that the Leals considered "unreasonably low." The offer was governed by the company's Claim Core Process Redesign and "Minor Impact Soft Tissue" ("MIST") programs, which were aimed at reducing payment for soft tissue injuries from accidents in which the claimant's vehicle sustained less than $1000.00 damage. Allstate intended to deny such claims or to make very low settlement offers and to fully litigate unsettled claims through arbitration and the superior and appellate courts. Allstate also attempted to discourage MIST claimants from hiring attorneys by sending letters such as the one sent the Leals and by making the claims difficult, time-consuming, and unprofitable for attorneys and claimants to litigate.

¶ 6 Dissatisfied with Allstate's offer, the Leals hired an attorney and sued Allstate's insured. In a compulsory arbitration, they were awarded $12,583.50. Allstate appealed to the superior court, and the jury awarded the Leals $23,000.00 in damages. The trial court also awarded costs and attorneys' fees and entered judgment in the amount of $50,074.65.

¶ 7 In 1999, the Leals filed this complaint against Allstate and others, alleging abuse of process, breach of an assumed or implied duty of good faith and fair dealing, and misrepresentation and non-disclosure in violation of the insurance and financial responsibility statutes. Allstate moved to dismiss all but the abuse of process claim under Arizona Rule of Civil Procedure 12(b)(6), contending that the claims were not actionable in Arizona. Allstate also asserted that the statute of limitations barred the misrepresentation and non-disclosure claim. The trial court agreed that Arizona does not recognize a cause of action for the breach of either an implied or assumed duty of good faith and that the misrepresentation claim was time-barred.

¶ 8 The court's final judgment stayed further proceedings on the abuse of process claim. The Leals timely appealed.

## II. DISCUSSION

¶ 9 The Leals have abandoned their misrepresentation and non-disclosure claim and maintain only their claims that Allstate had, and breached, either an assumed or implied duty of good faith and fair dealing. They also acknowledge that no Arizona case holds that an insurer owes a direct duty of good faith and fair dealing to a third party who has a claim against one of its insureds or that the third party may sue in tort for breach of that duty. They contend, however, that Allstate sought to convince the Leals that a special relationship existed between them and that, having done so, Allstate assumed a duty to treat the Leals as its own insureds.

¶ 10 The Leals also argue that Arizona's mandatory liability insurance statutes create a duty, as a matter of law, that requires them to treat claimants fairly and to negotiate settlements in good faith. We first address whether Allstate voluntarily assumed a duty of good faith.

### A. Allstate's Assumed Duty

¶ 11 The Leals ask us to recognize a third-party claimant's cause of action in tort against an insurer when, as here, the insurer actively seeks a claimant's trust, leads him to believe a special relationship exists between them, and uses that trust to reduce the size of the claim. The Leals contend that Allstate induced their reliance by promising to treat them as "customers" and then breached a resulting duty of good faith by pursuing

only its interest in minimizing the Leals' claim.

¶ 12 Because no contract of insurance exists between the Leals and Allstate on which to base a duty, the Leals assert that by affirmative conduct, Allstate assumed a duty that would not otherwise exist. They cite the general rule that, "[o]ne who acts gratuitously ... is liable for the negligent performance of the act, even though there was no duty to act." *Brown v. Michigan Millers Mut. Ins. Co.*, 665 S.W.2d 630, 634 (Mo.App.1983). *See also Lloyd v. State Farm Mut. Auto. Ins. Co.*, 189 Ariz. 369, 377, 943 P.2d 729, 737 (App.1996) (insurer owes duty of good faith to its insureds if it assumes their defense although the insurance contract does not actually cover the incident). When Allstate gratuitously agreed to treat the Leals as "customers," they argue, it thereby agreed to treat them as "insureds" and to deal with them in good faith.

¶ 13 The facts alleged, however, do not support this theory. Allstate's "Customer Service Pledge" did not promise a fair settlement nor did it promise to treat the Leals as *insureds*. It promised only to consider them as "customers" and to provide "quality customer service." That service was defined to include an explanation of the process, answers to questions, a "quick, fair investigation," assistance in the vehicle's repair and in determining eligibility for compensation, and a promise to *"discuss* fair payment." Nowhere did Allstate promise to make a fair settlement or to give equal consideration to the Leal's interests, as the duty of good faith would require. Thus, Allstate did not expressly assume a duty of good faith and fair dealing by adopting the Customer Service Pledge.

¶ 14 The Leals argue, however, that Allstate intentionally induced their trust and thus created a "special relationship" on which to base a duty. They cite *Enyart v. Transamerica Insurance Co.*, 195 Ariz. 71, 985 P.2d 556 (App.1998), as a case in which this court imposed on an insurer a duty of good faith to a third-party claimant.

¶ 15 Enyart had been injured and settled with the defendants and their insurers. *Id.* at 73, 985 P.2d at 558. The settlement was to be paid by an annuity and, as part of the settlement agreement, Transamerica was to obtain a backup annuity policy. When it failed to do so and the annuity company became insolvent, Enyart sued Transamerica. *Id.*

¶ 16 This court held that a bad faith tort claim may exist "if there is a 'special relationship arising from elements of public interest, adhesion, and fiduciary responsibility.'" *Id.* at 76, 985 P.2d at 561 (quoting *Burkons v. Ticor Title Ins. Co.*, 168 Ariz. 345, 355, 813 P.2d 710, 720 (1991)). *Burkons* recognized that tort damages may be appropriate for the breach of special contractual relationships in which the object is "service, professional help, security or other intangibles." 168 Ariz. at 355, 813 P.2d at 720.

¶ 17 But, in *Enyart,* a contract to procure insurance existed, and Enyart had released his legal claims in exchange for Transamerica's promise. 195 Ariz. at 77, 985 P.2d at 562. Moreover, "Enyart's desire for security so informed his agreement with Transamerica that the relationship ... became one involving fiduciary obligations." *Id.* If Transamerica betrayed Enyart's trust, it could be liable in tort. *Id.*

¶ 18 Here, no formal agreement or contract was signed by Allstate and the Leals by which the Leals entrusted Allstate with their security. Further, the Leals did not release any rights in exchange for trusting Allstate, and in fact, they did not ultimately trust Allstate because they hired their own attorney to represent them. *Enyart* does not control here.

¶ 19 The Leals also allege that from a special relationship between an insurer and "its injured claimant," a duty of good faith may arise. They cite *Noble v. National American Life Insurance Co.*, 128 Ariz. 188, 189–90, 624 P.2d 866, 867–68 (1981), but that case recognized the insurer's duty to act in good faith when dealing both with claims *against* its insured and with claims *by* its insured to policy benefits. In *Noble,* as in *Enyart,* the relationship between the parties was contract-based. Neither case holds that the insurer's duty extends to a third-party stranger to the insurance contract.

¶ 20 The Leals contend that, just as an insured, a third-party claimant has less bargaining power than the insurance company and may be economically vulnerable, triggering a duty equivalent to that owed to an insured. But, unlike an insured who owes reciprocal duties of cooperation to an insurer, *United Services Automobile Ass'n v. Morris*, 154 Ariz. 113, 117, 741 P.2d 246, 250 (1987) (when insurer defends insured, latter must cooperate and aid in the defense), the Leals did not give up control of the settlement of their claim nor of their freedom of action. Nothing in the Customer Service Pledge deprived them of any and all remedies against Allstate's insured or against Allstate itself if the insured assigned any bad faith claims he might have. Allstate did not even promise to pay the Leals' claim; it promised only to discuss fair payment. All of Allstate's promises together did not create the type of fiduciary—like relationship we found to exist in *Enyart*.

¶ 21 We imply "a covenant of good faith and fair dealing in every *contract.*" *Rawlings v. Apodaca*, 151 Ariz. 149, 153, 726 P.2d 565, 569 (1986)(emphasis added). "The duty [to act in good faith] arises by virtue of a *contractual* relationship." *Id.* (Emphasis added.) Thus, it is well established that a third-party claimant, a stranger to the contract, cannot sue the insurer for tortious breach of the duty of good faith. *See, e.g., Ring v. State Farm Mut. Auto. Ins. Co.*, 147 Ariz. 32, 35–36, 708 P.2d 457, 460–61 (App.1985)(without the insured's assignment of rights, injured third party cannot sue insurer; third party "is a stranger to the fiduciary relationship between" insurer and insured). *See also Scroggins' v. Allstate Ins. Co.*, 74 Ill.App.3d 1027, 30 Ill.Dec. 682, 393 N.E.2d 718, 721 (1979)(if no statute or contract allows direct action, third-party claimant cannot sue the insurer for breach of good faith duty). None of the Leals' arguments persuades us to alter these basic principles.

¶ 22 Further, the Leals were not injured by any bad faith by Allstate because in a direct action against the insured, they prevailed and were awarded more in damages than they had sought in their settlement offer to Allstate. They did not give up any rights in return for allowing Allstate to negotiate toward a settlement, and when dissatisfied with Allstate's settlement offer, they filed suit. Thus, they were not without a remedy due to their weaker bargaining power or reliance on any promise from Allstate.

¶ 23 The Leals additionally assert claims of promissory estoppel and detrimental reliance, but they do not allege that they actually relied to their detriment on a promise by Allstate. They state that they initially cooperated in providing documents, agreed not to hire an attorney immediately, and did not immediately investigate the accident. They do not allege that they gave Allstate documents that otherwise they would not have provided, that their case suffered due to delay in hiring an attorney, or that they would have investigated differently had they not relied on the Customer Service Pledge. *See generally* Robert E. Keeton and Alan I. Widiss, *Insurance Law, A Guide to Fundamental Principles, Legal Doctrines, and Commercial Practices* 652–53 (1988)(a claimant is entitled to redress for injury due to justifiable, definite, and substantial reliance on the insurer's statements, representations, or acts). The Leals have not alleged any substantial detriment and, thus, these claims fail.

### B. Duty Implied In Law

¶ 24 The Leals also contend that the duty of good faith and fair dealing inheres in the relationship between an insurer and a third-party claimant because automobile insurance is required by law for the public benefit. *See, e.g.,* Ariz.Rev.Stat. Ann. ("A.R.S.") §§ 28–4009, 28–4135 (1998) (requiring automobile liability insurance); *Geyer v. Reserve Ins. Co.*, 8 Ariz.App. 464, 467, 447 P.2d 556, 559 (1968) (claims of auto accident victims to insurance funds are "interests of the highest protectible order"). Thus, they argue, accident victims are intended third-party beneficiaries of the insurance policy, and the insurer must have a corresponding duty to deal with them in good faith. *See Allstate Ins. Co. v. Tucker*, 178 Ill.App.3d 809, 127 Ill.Dec. 922, 533 N.E.2d 1004, 1008 (1989) (injured members of the public are liability insurance beneficiaries).

¶ 25 Although accident victims may be intended beneficiaries of state-mandated insurance, this does not mean that they are the intended beneficiaries of every insurance policy provision. The duty of good faith and the obligation to consider the insured's interest are to encourage settlement within policy limits and to prevent financial disaster to the insured. *See Ring,* 147 Ariz. at 36, 708 P.2d at 461. They are not necessarily intended to deter litigation or to help claimants quickly collect payments.

¶ 26 Moreover, *Ring* rejected an argument that an insurance policy provision delaying the insurer's obligation to pay until a judgment against its insured was affirmed on appeal conflicted with the Safety Responsibility Act (the predecessor to A.R.S. sections 28–4001 *et seq.*). *Id.* at 35, 708 P.2d at 460. Thus, if the mandatory insurance laws do not require an insurer to pay a judgment before it has been affirmed, those laws surely do not require an insurer to settle and pay a third-party's claim before that party has even obtained a judgment.

¶ 27 The Leals also contend that, even if the mandatory liability insurance statutes do not require an insurer to pay a claim until it is reduced to judgment, public policy should prohibit insurers from rejecting an entire class of third-party claims, such as the MIST claims, solely to increase profits. Thus, a tort action should exist "when an insurer is committing a fraud on the state, on its own insured, and on the public by selling statutorily mandated insurance knowing that it will not pay a specified class of injuries under that required coverage." But, Allstate cannot refuse to *pay* a class of claims even if it refuses to settle them. Once judgment was entered against Allstate's insured, Allstate must pay these claims. The Leals have not alleged that Allstate has refused to pay valid claims reduced to judgment, which is all that is required under the statutes.

¶ 28 Therefore, we decline to read into the Vehicle Insurance and Financial Responsibility Act, A.R.S. sections 28–4001 to 4153, a provision that absent fair claims settlement practices an insurance company may be sued for breach of a settlement duty. Section 20–461 of the Insurance Code specifically addresses "[u]nfair claim settlement practices," and may prohibit the types of practices complained of in this lawsuit. Section 20–461(D), however, states that it does not grant a private right of action against an insurer but rather creates "an administrative remedy to the director for any violation of this section." Therefore, the Vehicle Insurance and Financial Responsibility Act, which does not ·even mention unfair claim settlement practices, does not support a cause of action based on an insurance company's settlement practices.

¶ 29 Because Allstate owed no duty to the Leals to negotiate a settlement in good faith, the trial court properly dismissed counts II and III of the complaint for failure to state a claim.

¶ 30 In light of our conclusion that no duty exists between Allstate and the Leals, we decline to address the Leals' arguments that Allstate breached its duty by failing to negotiate in good faith and to settle their claim for a fair amount.

### III. CONCLUSION

¶ 31 Although the Leals have alleged that Allstate induced their trust and promised to treat them as an insured, we cannot agree that the alleged "special relationship" is a fiduciary-like relationship from which an implied duty of good faith and fair dealing arises. Because we also reject the argument that a good faith duty emanates from our mandatory insurance laws, we affirm the trial court's dismissal of the Leals' claims.

CONCURRING: SHELDON H. WEISBERG, Judge, and JAMES B. SULT, Judge.