Luis BALLESTEROS, et al., Plaintiffs,

v.

AMERICAN STANDARD INSURANCE COMPANY OF WISCONSIN, et al., Defendants.

No. CV 05–329–TUC–CKJ.

United States District Court, D. Arizona.

July 7, 2006.

Elliot A. Glicksman, Law Office of Elliot Glicksman PLC, John C. Gabroy, Richard Allan Brown, Gabroy Rollman & Bosse PC, Tucson, AZ, for Plaintiffs.

Keith Beauchamp, Steven J. Hulsman, Lewis & Roca LLP, Phoenix, AZ, for Defendants.

## ORDER

JORGENSON, District Judge.

Pending before the Court is Plaintiff's Motion to Remand and Motion for Leave to Amend the Complaint.[1] For the reasons stated below, the Motion to Remand is granted.

## I. STANDARD OF REVIEW: REMOVAL AND FRAUDULENT JOINDER

According to the removal statute, "any civil action brought in a State court of

---

1. As the Motion to Remand is being granted based on a viable claim against an Arizona defendant listed in the First Amended Complaint, the Court need not address the Motion for Leave to Amend seeking to add claims in a proposed Second Amended Complaint.

which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and the division embracing the place where such action is pending." 28 U.S.C. § 1441(a). In other words, "[a]n action filed in state court may be removed only if the district court could have exercised jurisdiction over the action if originally filed there." *Duncan v. Stuetzle,* 76 F.3d 1480, 1485 (9th Cir.1996). "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, ... and is between ... citizens of different States." 28 U.S.C. § 1332(a)(1). With certain exceptions, Defendants may remove to federal court a case originally filed in state court as long as the requirements for subject matter jurisdiction are met. *See* 28 U.S.C. §§ 1441, 1446. If the federal court subsequently determines that it no longer has subject matter jurisdiction, it must remand the case to state court. *See* 28 U.S.C. § 1447(c). In diversity actions, the Court applies state substantive law. *See Med. Lab. Mgmt. Consultants v. Am. Broad Cos., Inc.* 306 F.3d 806, 812 (9th Cir.2002).

The removal statute is strictly construed against removal jurisdiction. *See Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir.1992). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Id.* This "strong presumption against removal means that the defendant always has the burden of establishing that removal is proper." *Id.* Moreover, because Defendant maintains that Morris and Kopin were fraudulently joined as defendants in order to defeat diversity jurisdiction, there is an even greater burden.

Fraudulent joinder is a term of art and a defendant's presence will be ignored for purposes of diversity pursuant to this doctrine only if "the plaintiff fails to state a cause of action against a resident defendant, and the **failure is obvious according to the *settled rules* of the state.**" *Morris v. Princess Cruises, Inc.,* 236 F.3d 1061, 1067 (9th Cir.2001)(internal quotes and citations omitted)(emphasis added); *Ritchey v. Upjohn Drug Co.,* 139 F.3d 1313, 1318 (9th Cir.1998)(same). "In evaluating fraudulent joinder claims, [the court] must initially **resolve ... all ambiguities in the controlling state law in favor of the non-removing party.** [The court] then determine[s] whether that party has any possibility of recovery against the party whose joinder is questioned." *Dodson v. Spiliada Maritime Corp.,* 951 F.2d 40, 42 (5th Cir.1992)(emphasis added). "In borderline situations, where it is doubtful whether the complaint states a cause of action against the resident defendant, the doubt is ordinarily resolved in favor of the retention of the case in state court." *Albi v. Street & Smith Publications,* 140 F.2d 310, 312 (9th Cir.1944); *see also Gaus,* 980 F.2d at 566; *Morris,* 236 F.3d at 1067; *Ritchey,* 139 F.3d at 1318. Indeed, a "merely defective statement of the plaintiff's action does not warrant removal ... It is only where the plaintiff has not, in fact, a cause of action against the resident defendant, and has no reasonable ground for supposing he has, and yet joins him in order to evade the jurisdiction of the federal court, that the joinder can be said to be fraudulent ..." *Id.; see also Mayes v. Rapoport,* 198 F.3d 457, 463–464, 466 (4th Cir.1999)("glimmer of hope" that plaintiff can establish claim is sufficient to preclude application of fraudulent joinder doctrine); *Gottlieb v. Westin Hotel Co.,* 990 F.2d 323, 327 (7th Cir.1993)(finding of fraudulent joinder appropriate only if there is no possibility that claim can be stated); *Filla v. Norfolk Southern Ry. Co.,* 336 F.3d 806, 811 (8th Cir.2003)(if there is a "colorable" cause of action, joinder is not

fraudulent and remand is mandatory); *Perez v. AT&T Co.*, 139 F.3d 1368, 1380–1381 (11th Cir.1998)(in fraudulent joinder inquiry, federal courts do not weigh merits of plaintiff's claim beyond determining whether claim is arguable under state law).[2]

Accordingly, if the facts alleged in the Complaint, taken as true and drawing all inferences in Plaintiffs' favor, can possibly state a claim under Arizona law against one of the individual defendants in question, there is no fraudulent joinder and this case must be remanded to state court. Pursuant to this standard, the relevant facts are discussed below.

## II. *BACKGROUND*

Luis Ballesteros ("Plaintiff") is a Spanish-speaking insured who obtained auto insurance through American Standard Insurance Company of Wisconsin ("ASI"). Although Plaintiff speaks only Spanish, ASI provided him with a "Rejection/Selection Form for Uninsured ['UM'] and Underinsured ['UIM'] Motorist Coverage" written only in English. Plaintiff signed this form rejecting both UM and UIM coverage. Subsequently, Plaintiff's mother-in-law, who was covered by Plaintiff's insurance, was killed by an uninsured driver in an auto accident. Arguing that the waiver of UM coverage was invalid as the notice was not provided in Spanish, Plaintiff made a claim for UM coverage arising out of this accident which ASI later denied.

Plaintiff alleges, in part, that ASI, an ASI insurance agent (Morris), and an ASI insurance adjuster (Kopin) intentionally and wantonly failed to give Spanish-speaking insureds a written offer of UM/UIM coverage up to the amount of their liability limits in Spanish, and subsequently denied UM/UIM claims by these Spanish-speaking insureds based on invalid waivers of UM/UIM coverage. Plaintiff further alleges that ASI and its agents were motivated to engage in this practice as UM/UIM coverage is less profitable than other forms of insurance, and ASI's agents were compensated based on the profitability generated for the company. Plaintiff filed this class action lawsuit on behalf of all individuals insured through ASI over the last six years who speak primarily Spanish, who were not provided a UM/UIM rejection/selection form in Spanish, and who suffered injury as a result of the fault of an uninsured or underinsured motorist. On behalf of the class, Plaintiff asserts claims for: (1) Breach of Contract; (2) Bad Faith; (3) Consumer Fraud; (4) Breach of Fiduciary Duty; (5) Negligence; and (6) Negligent Misrepresentation.[3] As relevant to the Motion to Remand, Plaintiff has asserted claims for bad faith, negligence, and negligent misrepresentation against Morris and a claim for bad faith against Kopin.[4] Both Morris and Kopin are residents of Arizona and therefore defeat diversity jurisdiction in this case. ASI argues, however, that Morris and Kopin were fraudulently joined as there are

---

**2.** The Court notes that ASI argues that fraudulent joinder claims are evaluated pursuant to a summary judgment standard. *See* ASI's Notice of Removal at 3. A review of the pertinent case law from the Ninth Circuit shows that this argument is incorrect. The proper standard of review is discussed in the text of this Order.

**3.** In relation to the Motion to Remand, Plaintiff filed a Motion for Leave to file a Second

Amended Complaint asserting claims for negligence and negligent misrepresentation.

**4.** Plaintiff has conceded that the breach of contract, consumer fraud, and breach of fiduciary duty claims are inapplicable to both Morris and Kopin. Plaintiff has also conceded that the negligence and negligent misrepresentation claims are inapplicable to Kopin.

no viable claims against them under Arizona law. As ASI has the burden of demonstrating that there are no possible claims against these individuals, the Court shall assess ASI's specific arguments pertaining to fraudulent joinder.

## III. *DISCUSSION*

### A. Spanish Language Selection Forms for UM/UIM Coverage

■■ As discussed in the Court's previous Order regarding the Certified Question to the Arizona Supreme Court,[5] Defendant argues that as a threshold matter, all of Plaintiff's claims must fail as the controlling Arizona statute pertaining to notice of UM/UIM coverage only requires notice in English; thus, as there is no duty to provide notice in Spanish, ASI argues that it and the other individually named defendants can not be liable for any of the claims asserted by Plaintiff. *See* A.R.S. § 20–259.01(A) & (B). ASI argues that the Arizona courts have no authority to add or subtract from the statute, and that adding a Spanish requirement would obviously add a requirement not contained in the UM/UIM statute. *See Tallent v. Nat'l Gen. Ins. Co.*, 185 Ariz. 266, 268, 915 P.2d 665, 667 (1996).[6] Defendant also argues that the Arizona legislature knows how to include a Spanish language requirement in its statutes as such a requirement is required in at least nine other Arizona statutes. *See* A.R.S. §§ 6–1257; 6–1411; 12–1596; 12–1598.16; 23–906; 25–504; 31–229; 36–504; 44–1362. Further, Defendant emphasizes that in 1997, the Arizona legislature revised A.R.S. § 20–259.01 to require written notice of UM/UIM coverage

in both English and Spanish. *See* Arizona Session Laws 1997, Ch. 125, § 1(A). However, in 1998, the legislature again revised the statute whereby written notification in Spanish was not mentioned. *See* A.R.S. § 20–259.01(A) & (B). Thus, Defendant argues that the legislature must have intended to eliminate the Spanish language requirement. *See North Valley Emergency Specialists, L.L.C. v. Santana*, 208 Ariz. 301, 303 93 P.3d 501, 503 (2004)(Arizona courts "presume that by amending a statute, the legislature intends to change the existing law.")(internal quotes and citations omitted).

The Court disagrees with ASI's position. In light of the stringent standard of review, ASI has not met its heavy burden to support its position pertaining to the Spanish language issue. The statute in question states in relevant part:

> Every insurer writing automobile liability or motor vehicle liability policies shall make available to the named insured thereunder and by written notice offer the insured and at the request of the insured shall include within the policy uninsured [and underinsured] motorist coverage which extends to and covers all persons insured under the policy, in limits not less than the liability limits for bodily injury or death contained within the policy.

A.R.S. § 20–259.01(A) & (B). A review of the statute shows that on its face, the statute at issue does not mention or otherwise address whether a Spanish language form should be given to Spanish speaking insureds; thus, based on the statute alone, it is unclear whether such a procedure is

---

**5.** On May 26, 2006, the Court received notice that the Arizona Supreme Court declined to accept jurisdiction of the Certified Question.

**6.** In *Tallent*, the court held that an offer of UM/UIM coverage was valid even though the insurer did not explain to the insured the contours of what UM/UIM coverage entailed.

*Tallent*, 185 Ariz. at 267–268, 915 P.2d at 666–667. This holding was based on the fact that A.R.S. § 20–259.01(A) & (B) only required the insurer to make a written "offer," and that the word "offer" as used in the statute was not an ambiguous term that required the insurer to explain the details of UM/UIM coverage to insureds. *Id.*

required in order to satisfy the statutory mandate. While ASI is correct that in 1997 the legislature revised A.R.S. § 20–259.01 to require written notice of UM/UIM coverage in both English and Spanish, and in 1998 the legislature revised the statute whereby notice in Spanish was not mentioned, this does not definitively resolve the inquiry in light of pertinent statutory history and case law. Even if Arizona courts generally "presume that by amending a statute, the legislature intends to change the existing law," any such presumption has been rebutted in this case. *See North Valley Emergency Specialists,* 208 Ariz. at 303, 93 P.3d at 503.

As Plaintiff correctly argues, and Defendant concedes, the legislative history reflects that the focus of the 1998 amendments was not on eliminating a Spanish language requirement, but in restoring the previously eliminated requirement that an insurance company make a written offer of UM/UIM coverage to an applicant. *See* J. DeCancio, *Legislative Review S.B. 1445— The Legislature's Attempt to Reverse Judicial Treatment of Uninsured and Underinsured Motorist Coverage in Arizona,* 30 Ariz. St. L.J. 469 (Summer 1998). Prior to the mid–1960's, Arizona drivers were required to prove that they were adequately insured or otherwise capable of paying minimum amounts of liability under Arizona's Safety Responsibility Act. *Id.* at 472. However, this requirement changed in 1965 when the legislature enacted A.R.S. § 20–259.01 which authorized insurers to sell UM coverage to insureds seeking to protect themselves in the event they or their family members were injured by a financially irresponsible driver. *Id.* In 1972, the legislature amended A.R.S. § 20–259.01 to compel insurers selling liability insurance to automatically include UM coverage; in 1981, the statute was amended to require insurers to automatically include UM coverage of $15,000 in every policy and to notify the insured in writing that he could purchase up to the limits of the insured's liability coverage. *Id.* In 1993, however, the legislature amended the statute such that compulsory UM coverage was no longer required. *Id.* at 473, 480–81. In exchange for eliminating the mandatory UM coverage, the legislature required insurers to make a mandatory written offer of UM coverage; the 1993 amendment required that insurers "make available to the named insured ... and by written notice offer the insured and at the request of the insured ... include within the policy uninsured motorist coverage ... in limits not less than the liability limits for bodily injury or death contained within the policy." *Id.* (quoting 1993 version of the statute).

In 1997, there was a short-lived amendment of A.R.S. § 20–259.01 whereby insurers would no longer be compelled to offer insureds UM/UIM coverage. *Id.* While the removal of the mandatory offer language was the "sole focus of contention" regarding the bill, language was included in 1997 regarding a Spanish language version of a consumer information form pertaining to UM/UIM coverage. *Id.* at 481, 483, 483 n. 118, 93 P.3d 501. However, due to a successful referendum effort regarding the mandatory UM/UIM offer which was slated for a public vote in November of 1998, the legislature responded by quickly restoring the mandatory UM/UIM written offer requirement in 1998; thus, the referendum issue became moot and A.R.S. § 20–259.01 was restored to its pre–1997 version. *Id.* at 479–484, 93 P.3d 501; S.B. 1271 Final Revised Fact Sheet.

A review of the legislative history of A.R.S. § 20–259.01 shows that the 1998 amendment of the statute did not specifically address the requirement of a Spanish language form, and was not intended to eliminate any such requirement in regards to written offers of UM/UIM coverage. This conclusion is further buttressed by

official Circular Letters (and attachments) sent out by the Arizona Department of Insurance ("AZDI") to all insurance industry representatives in 1998. *See* Plaintiff's Motion to Remand (Ex. 1 and Ex. 2). In an August 11, 1998 letter, the AZDI states:

> This is to inform you about the effect of recent law changes regarding the offer, purchase, and sale of uninsured motorist coverages ... The new [1998] legislation ... reinstates the requirement that every insurer ... make available and offer by written notice [UM/UIM] coverage ... in limits not less than the liability limits for bodily injury or death contained within the policy ... As under former law, an insurer must provide to all applicants a selection form containing written notice and an offer of [UM/UIM] coverage ... Another purpose of this Circular Letter is to inform insurers that the attached forms, in English and Spanish, may be used by insurers to satisfy the requirements of A.R.S. § 20–259.01.

See Plaintiff's Motion to Remand (Ex. 1, 8/1/98 AZDI Circular Letter). As stated in the letter, the AZDI also attached an approved UM/UIM selection form in Spanish that insurers could use in making the mandatory UM/UIM offer to Spanish speaking insureds.

Lastly, Arizona cases have emphasized that A.R.S. § 20–259.01 is "remedial and should be liberally construed in order to carry out the intent of the legislature." *Evenchik v. State Farm Ins. Co.,* 139 Ariz. 453, 458, 679 P.2d 99, 104 (1984). As the Arizona Supreme Court has recognized, "the purpose of the [statute] is to guarantee that responsible drivers will have an opportunity to protect themselves and loved ones as they would others ... The legislature has a acknowledged a very real problem in Arizona. With the presence of so many uninsured or underinsured drivers, the only practical way responsible people can protect themselves from these per-

sons is to have the opportunity to buy [UM/UIM] coverage." *Ormsbee v. Allstate Ins. Co.,* 176 Ariz. 109, 112, 859 P.2d 732, 735 (1993). As such, Arizona courts have interpreted § 20–259.01's "make available" a written offer of UM/UIM coverage as requiring the insurer to "offer such coverage in a way reasonably calculated to bring to the insured's attention that which is being offered." *Giley v. Liberty Mut. Fire Ins. Co.,* 168 Ariz. 306, 812 P.2d 1124 (Ct.App.1991); *see also Tallent,* 185 Ariz. at 267, 915 P.2d at 666. Plaintiff argues that with respect to a Spanish-speaking applicant, an English language offer of UM/UIM coverage can not "offer such coverage in a way reasonably calculated to bring to the insured's attention that which is being offered." *Id.* Thus, Plaintiff argues that ASI's offer of UM/UIM coverage was invalid, and Plaintiff is therefore entitled to UM/UIM coverage arising from his mother-in-law's death at the hands of an uninsured motorist.

In light of the foregoing, at a minimum, it is unclear under Arizona law whether Spanish language UM/UIM selection forms must be given to Spanish-speaking insureds. It appears that insurers should provide UM/UIM selection forms in Spanish to Spanish speaking insureds in order to comply with A.R.S. § 20–259.01. Thus, in regards to ASI's threshold argument pertaining to Spanish language forms, the Court can not conclude that "the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state." *Morris,* 236 F.3d at 1067; *see also Dodson,* 951 F.2d at 42 ("In evaluating fraudulent joinder claims, [the court] must initially resolve ... all ambiguities in the controlling state law in favor of the non-removing party.").

### B. Bad Faith Claim Against Kopin

■ Plaintiff alleges that Kopin, a claims adjuster for ASI, is liable for bad

faith as she wrongfully withheld UM benefits based in part on her own financial interest. ASI argues that since Kopin was not a party to the insurance contract between ASI and Plaintiff, the bad faith claim against Kopin must fail due to lack of contractual privity. *See, e.g., Leal v. Allstate Ins. Co.*, 199 Ariz. 250, 254, 17 P.3d 95, 99 (Ct.App.2000); *Gruenberg v. Aetna Ins. Co.*, 9 Cal.3d 566, 108 Cal.Rptr. 480, 510 P.2d 1032, 1038–39 (1973); *Noble v. Nat'l American Life Ins. Co.*, 128 Ariz. 188, 189, 624 P.2d 866, 867 (1981); *Meineke v. Gab Bus. Servs., Inc.*, 195 Ariz. 564, 567, 991 P.2d 267, 270 (Ct.App.1999). Relying primarily on the aforementioned cases, ASI argues that Arizona law is clear that bad faith claims may only arise from the implied duty of good faith and fair dealing in contracts, and as Kopin was not a party to the contract, there is no conceivable bad faith claim against her under Arizona law. *Id.* The Court disagrees.

Contrary to ASI's assertion, the Arizona case law pertaining to the precise issue before the Court is ambiguous, and any ambiguities must be resolved in Plaintiff's favor at this stage of the litigation. *See Morris*, 236 F.3d at 1067; *Dodson*, 951 F.2d at 42. ASI cites *Leal* for the proposition that the duty to act in good faith arises by virtue of the contractual relationship and a stranger to the contract can not sue for an alleged bad faith breach. *See* ASI's Notice of Removal at 8; *Leal*, 199 Ariz. at 254, 17 P.3d at 99. A review of *Leal* shows that the case did not address the issue before the Court: whether a party to the insurance contract (Plaintiff) could sue the insurer's adjuster for bad faith for wrongfully withholding insurance payments. Rather, the plaintiff in *Leal* was an injured motorist who attempted to sue the tortfeasor's insurer for bad faith failure to settle his claim; as the plaintiff in *Leal* was merely a "third-party claimant," the court found that the insurer could not be liable for bad faith under those circumstances. *Id.* In denying the plaintiff's bad faith claim, the *Leal* court also noted that the "Leals were not injured by any bad faith by [the insurer] because in a direct action against the insured, they prevailed and were awarded more in damages than they had sought in their settlement offer to [the insurer]." *Id.* ASI cites *Meineke* for the proposition that an insurer's adjuster owes no legal duty of care to insureds, and therefore can not be liable for bad faith. *See* ASI's Response to Motion to Remand at 4–5; *Meineke*, 195 Ariz. at 567–68, 991 P.2d at 270–71. Again, however, *Meineke* did not address whether a party to the insurance contract could sue the insurer's adjuster for bad faith. Rather, *Meineke* found that the insurer's adjuster did not owe a duty to the insured in the context of the plaintiff's negligence claim. *See Meineke*, 195 Ariz. at 568, 991 P.2d at 271. In reaching the conclusion that the insurer's adjuster could not be held liable for negligence, the court recognized that previous Arizona case law "held that the insurer's mishandling of a claim does not give rise to a claim for simple negligence ... If the insurer mishandles a claim, its insured may be entitled to recover ... for breach of contract, or damages in tort if the insurer's actions rise to the level of bad faith ... We see no reason to apply a different rule when the insurer's ... adjuster mishandles a claim." *Id.* Thus, as the insurer could not be held liable for negligence by simply mishandling a claim, the *Meineke* court likewise declined to hold the insurer's adjuster liable for negligence for mishandling a claim. *Id.*[7]

---

7. The Court notes that in footnote 14 on page 5 of ASI's Response to the Motion to Remand,

ASI quotes a portion of *Walter v. Simmons*, 169 Ariz. 229, 237, 818 P.2d 214, 222 (Ct.

ASI cites a holding from a California case, *Gruenberg*, whereby the court held that the insured could not sue the insurer's agents for bad faith as the insurer's agents were not parties to the contract, and therefore owed no duty of good faith and fair dealing. *See* ASI's Notice of Removal at 8; *Gruenberg v. Aetna Ins. Co.*, 9 Cal.3d 566, 108 Cal.Rptr. 480, 510 P.2d 1032, 1038–39 (1973). Immediately after citing this particular holding from *Gruenberg*, ASI states that *Gruenberg's* analysis of bad faith law was adopted in Arizona by *Noble v. Nat'l American Life Ins. Co.*, 128 Ariz. 188, 189, 624 P.2d 866, 867 (1981). The *Noble* court, however, did not adopt the specific *Gruenberg* holding cited by ASI. *See Noble*, 128 Ariz. at 189, 624 P.2d at 867. The *Noble* court never addressed the issue of whether an insured could sue an insurer's agent for bad faith. *Id.* Rather, the *Noble* court stated that the "issue presented is whether Arizona recognizes as a tort an insurer's bad faith refusal to pay a valid claim submitted by its insured under a policy of insurance ... While there are no Arizona cases precisely on point, a number of other jurisdictions recognize the existence of tort liability for the willful refusal to pay a valid claim by the insured." *Id. Gruenberg*, which was the leading case on the issue at the time, was among the cases cited by the *Noble* court in finding that the plaintiff had a claim for the insurer's bad faith refusal to pay a claim. *Id.*

To the extent the portion of the *Gruenberg* holding cited by ASI addresses the issue before the Court, it is not controlling law in Arizona. Further, there is subsequent Arizona case law recognizing that *Gruenberg's* conclusion that non-insurer defendants can not be held liable for bad faith due to lack of contractual privity may be flawed. *See Farr v. Transamerica Occidental Life Ins. Co. of California*, 145 Ariz. 1, 11, 699 P.2d 376, 386 (Ct.App. 1984). As the *Farr* court stated: "It is true that *Gruenberg* held that non-insurer defendants who administer claims are not parties to agreements, thereby relieving them of any implied duty of good faith and fair dealing ... an argument can be made that *Gruenberg* is unsound in that respect ..." *Id.* In relation to *Gruenberg* possibly being unsound, the *Farr* court cited *Hale v. Farmers Insurance Exchange*,[8] 42 Cal. App.3d 681, 704, 117 Cal.Rptr. 146 (Ct. App.1974) (Kerrigan, J., dissenting). The portion of the *Hale* dissent cited in *Farr* states in relevant part:

[T]he extension of the *Gruenberg* rule protecting independent contractors from punitive damage liability makes little sense in the present context for it would mean that any employee of an insurance company who willfully and in bad faith denies a claimant payment on his policy of insurance would be insulated from the punishment of exemplary damages for his conduct. One's sense of justice can-

App.1991), whereby an independent adjuster "was dismissed from the bad faith claim because he owed no contractual duty to act in good faith or deal fairly with [the insured]." As Plaintiff points out, however, it appears that the bad faith claim in question against the independent adjuster was voluntarily dismissed by the plaintiff in *Walter. See id.*; Plaintiff's Reply to Motion to Remand at 8. Thus, the dismissal of the adjuster was not an issue on appeal, and unnecessary statements on that issue are *dicta* without precedential value. *See U.S. v. Armijo*, 5 F.3d 1229, 1233

(9th Cir.1993)(statements that constitute dicta are not binding); *U.S. v. Matta–Ballesteros*, 71 F.3d 754, 773 (9th Cir.1995)(stating that cases should not be decided by "dicta ... for what a court does not have before it a court does not authoritatively address ... [dicta is] not the holding of the court ... [and] do[es] not operate as binding decisional precedent.").

8. *Hale* was disapproved of by *Egan v. Mutual of Omaha Ins. Co.*, 24 Cal.3d 809, 169 Cal. Rptr. 691, 620 P.2d 141 (1979).

not help but be affronted when the application of abstract legal doctrine yields such a result in practice. The *Gruenberg* court could not possibly have intended to insulate intentional tortfeasors from exemplary liability merely because they happen to work for an insurance carrier.

*Id.* Citing the *Sparks* [9] case whereby the Arizona Supreme Court found that the insurer and its soliciting and servicing agent could be held jointly and severally liable for bad faith, the Farr court explained that "Sparks turns upon the idea that the insurer and its agent are engaged in a joint venture so that each is jointly and severally liable with the other for a bad faith refusal to pay." *Farr*, 145 Ariz. at 11, 699 P.2d at 386. Thus, as the insurer and agent in Farr were viewed to be involved in a joint venture, both the insurer and the insurer's agent (despite the lack of contractual privity) owed a common duty to the insureds to act in good faith; the insurer's agent, therefore, could be held jointly and severally liable for bad faith. *Id.* [10]

Pursuant to the foregoing discussion, it is unclear in Arizona whether Kopin, who is employed by ASI as an adjuster, could be held liable for bad faith. [11] Therefore, as to the bad faith claim against Kopin, the Court can not conclude that "the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state." *Morris*, 236 F.3d at 1067; *see also Dodson*, 951 F.2d at 42 ("In evaluating fraudulent joinder claims, [the court] must initially resolve ... all ambiguities in the controlling state law in favor of the non-removing party."). As such, Kopin's Arizona citizenship must be considered which eliminates jurisdiction in this case as Plaintiff is also a citizen of Arizona. [12]

## IV. CONCLUSION

Accordingly, IT IS HEREBY ORDERED as follows:

---

**9.** *Sparks v. Republic Nat'l Life Insurance Co.*, 132 Ariz. 529, 539–40, 647 P.2d 1127, 1137–38 (1982).

**10.** ASI argues that *Farr* is inapplicable to this case as it only applies to the narrow situation where an "insurer enters into a joint venture with a separate entity that functions as the insurer's claims administrator." *See* ASI's Response to Motion to Remand at 5. As Kopin was an employee of ASI, as opposed to an independent claims adjuster acting as a joint venture partner, ASI argues that Kopin can not be liable for bad faith. As Plaintiff correctly responds, *Farr* did not limit its reasoning to such a narrow situation. Further, *Farr* criticized the specific *Gruenberg* holding relied on by ASI, and rejected the requirement of contractual privity for bad faith without limiting that holding to independent claims adjusters. Lastly, the *Farr* court stated that the classic elements of a "joint venture" do not actually have to be met to hold an adjuster liable for bad faith where contractual privity is lacking. Indeed, the *Farr* court recognized that "not all the features of a joint

venture are present here ... we note that here there was no proof of profit and loss sharing and no proof of a joint right to control. Thus, the classical elements of a joint venture are missing. But if that is true here, it was also true in *Sparks*." *Id.*

**11.** The Court notes that ASI attached a memorandum decision whereby a federal district judge in Arizona concluded that an insurer's agent could not be held liable for bad faith under Arizona law. *See* ASI's Notice of Removal (Ex. 3). However, Plaintiff also attached a memorandum decision from the same year whereby another federal district judge in Arizona concluded that it was possible for an insurer's agent to be held liable for bad faith under Arizona law. *See* Plaintiff's Reply In Support of Motion to Remand (Ex. A). These conflicting decisions lend further support to the Court's conclusion that the issue is unsettled in Arizona.

**12.** As the Court must remand the case based on this finding, the Court shall not address the other claims asserted against Morris.

(1) Plaintiff's Motion to Remand is **granted.**

(2) All other pending motions are **denied as moot.**

(3) This case is **remanded** to Pima County Superior Court.

(4) The **Clerk of the Court** shall enter judgment and close the file in this case.