236 F.3d 1061 (9th Cir. 2001)
 OTTILIE MORRIS, Individually and as Executrix of the Estate of Roy I. Morris, Plaintiff-Appellant,
v.
PRINCESS CRUISES, INC.; AMERICAN INTERNATIONAL ASSISTANCE SERVICE, INC.; NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA; BERKELY CARE LIMITED; CRUISE CONSULTANTS, Defendants-Appellees.
 No. 99-55092
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted October 2, 2000
Filed January 10, 2001
 
 [Copyrighted Material Omitted][Copyrighted Material Omitted]
 Sharon S. McCally, Moore & McCally, P.C., Houston, Texas, for the plaintiff-appellant.
 Eric M. Danoff, Kaye, Rose & Partners, LLP, San Francisco, California. Elsa M. Ward, Kaye, Rose & Partners, LLP, San Francisco, California, for defendant-appellee Princess Cruises, Inc.
 Nicole Y. Pomerantz , Michael F. Bell, Galton & Helm, Los Angeles, California, for defendants-appellees American International Assistance Service, Inc., National Union Fire Insurance Company of Pittsburgh, PA, and Berkelycare Ltd.
 Appeal from the United States District Court for the Central District of California Christina A. Snyder, District Judge, Presiding. D.C. No.CV-97-04315-CAS
 Before: Diarmuid F. O'Scannlain, Ferdinand F. Fernandez and Johnnie B. Rawlinson, Circuit Judges
 O'SCANNLAIN, Circuit Judge:
 
 
 1
 We must decide whether the federal court had removal jurisdiction over an action brought by a passenger against a cruise line and insurance companies alleging various tort and contract claims arising out of events in the port city of Bombay, India, and, if so, whether these claims were properly dismissed on summary judgment.
 
 
 2
 * Ottilie Morris ("Mrs. Morris") appeals the district court's dismissal on summary judgment of her tort and contract claims against Princess Cruises, Inc. ("Princess") and American International Assistance Service, Inc., National Union Fire Insurance Company of Pittsburgh, PA, and BerkelyCare Limited (collectively, the "Insurers"). These claims arose out of a Princess cruise that Mrs. Morris and her late husband, Roy I. Morris ("Mr. Morris"), took from Athens to Bombay in November 1995.
 
 
 3
 In June 1995, Mr. and Mrs. Morris, who had taken a number of Princess cruises in the past, made reservations for a Princess "Holy Lands" cruise through Cruise Consultants Co. ("Consultants"), a travel agency based in San Antonio, Texas. At the same time, the Morrises purchased an excess insurance policy known as "Love Boat Care" (the "Policy") administered by BerkelyCare and underwritten by National Union Fire Insurance Co. The Policy's designated emergency assistance provider was American International Assistance Service, Inc. ("AIAS"). The Policy's benefits included, inter alia, $25,000 coverage for emergency evacuation "to the nearest hospital where appropriate medical treatment can be obtained" and round-trip economy airfare for a family member traveling with the insured; $10,000 medical expense coverage for illness; worldwide emergency telephone assistance so that "English-speaking help and advice may be furnished";and emergency medical assistance to help locate the "nearest qualified medical facility" and to provide up to a $1000 advance payment to a hospital if needed to admit the insured. The Policy's Description of Coverage contained the following caveat:
 
 
 4
 Note that the problems of distance, information and communications make it impossible for National Union Fire Insurance Company, BerkelyCare Ltd, Princess or its assistance service provider to assume any responsibility for the availability, quality, use, or results of any emergency service. In all cases, you are still responsible for obtaining, using, and paying for your own required services of all types.
 
 
 5
 In November 1995, the Morrises departed from Athens aboard the Island Princess for a 28-day cruise to Singapore by way of Bombay. On November 22, Mr. Morris, who had a history of heart disease, contracted pneumonia and was admitted to the ship's medical center under the care of the ship's physician, Dr. Katrina Lewis ("Dr. Lewis"). Given the seriousness of Mr. Morris's condition, Dr. Lewis believed that he should be evacuated as soon as possible to a land-based intensive care unit ("ICU"). She spoke with the ship's captain about the possibility of arranging for helicopter evacuation or diverting the ship to the nearest port, but was told that the ship was outside the range of any emergency medical helicopters and too far from appropriate medical facilities. Thus, the ship proceeded full speed to Bombay.
 
 
 6
 On November 24, Dr. Lewis contacted AIAS, the emergency assistance provider under Mr. Morris's Policy. Dr. Lewis informed AIAS that she would arrange for Mr. Morris to be air evacuated by AEA, International ("AEA") to Singapore as soon as the ship reached port in Bombay and that AIAS's assistance would not be necessary. AEA is the only emergency evacuation assistance provider that Princess Cruises employs in that region and the provider that Dr. Lewis was specifically instructed to use by her supervisors. According to uncontradicted testimony, AEA has a reputation for being a very reliable emergency assistance provider. AIAS monitored Mr. Morris's condition and faxed its approval of the air evacuation plan to AEA with a guarantee for the full $25,000 policy limit for emergency evacuation. AEA represented to Dr. Lewis and AIAS that it would have a jet ready to evacuate Mr. Morris to Singapore upon his arrival in Bombay.
 
 
 7
 The ship reached port in Bombay in the early morning hours of November 27. An AEA-affiliated physician, one Dr. Mehra, came aboard and examined Mr. Morris. AEA apparently represented to Dr. Lewis that Dr. Mehra was a specialist in aviation medicine. After the examination, Dr. Mehraexpressed his concern for Mr. Morris's oxygenation in the event that the plane lost cabin pressure during the flight to Singapore and recommended that the flight be delayed until Mr. Morris could be stabilized.
 
 
 8
 With this change in plans, it was agreed that Dr. Mehra would take Mr. Morris to a Bombay ICU by ambulance. The ambulance Dr. Mehra provided was woefully deficient. It was not equipped with any medical supplies or devices of any kind --including oxygen. It was also filthy, as was the stretcher onto which Mr. Morris was placed. Dr. Lewis herself testified that the ambulance was not appropriate for taking Mr. Morris to a hospital facility and expressed her concerns to Dr. Mehra, who replied that this was the only ambulance available. Relying on AEA's chosen physician, Dr. Lewis turned treatment of Mr. Morris over to Dr. Mehra, having first provided Mr. Morris with oxygen and blankets from the ship's medical center.
 
 
 9
 After a two-hour ambulance trip through Bombay, Dr. Mehra transported Mr. Morris to the Aradhana Intensive Care and Nursing Home. Mrs. Morris testified to the wretched conditions prevailing at the Aradhana facility. There was half an inch of urine on the floor; flies and roaches were everywhere. There was no medical equipment of any kind there. Mrs. Morris pleaded with Dr. Mehra to transfer her husband to a regular hospital. Dr. Mehra agreed, but demanded $1,200, which Mrs. Morris immediately handed over. After spending approximately six hours at the nursing home, Mr. Morris was transferred to Breach Candy Hospital in Bombay.
 
 
 10
 Meanwhile, AIAS attempted to contact Mrs. Morris to help her find hotel accommodations and to assist in having money wired to her from her family in the United States. According to Mrs. Morris, she checked in to the Hotel Shalimar at the recommendation of AIAS. During her stay there, she was assaulted and some of her personal belongings were stolen. She was also accosted by Dr. Mehra again, who demanded an additional $900, which Mrs. Morris refused to pay.
 
 
 11
 Mr. Morris was treated at Breach Candy for 14 days, and Mrs. Morris was pleased with the care Mr. Morris received there. On December 10, 1995, Mr. Morris was deemed fit to fly home to Texas. AIAS arranged for a first-class flight back to San Antonio for both Mr. and Mrs. Morris and provided a medical escort for the trip, as well. Mr. Morris arrived home feeling better and did not seek out medical attention for a couple of days. On December 15, Mr. Morris suffered a fatal heart attack during an angioplasty procedure. Cause of death was listed as severe coronary artery disease.
 
 
 12
 Mrs. Morris submitted a claim under the Policy in the amount of $16,592 for trip cancellation, loss of her personal belongings at the Hotel Shalimar, and hotel, meals and transportation while in Bombay. She submitted a second claim of $7,057.72 for medical expenses, including the $1,200 she paid to Dr. Mehra. Based on their currency conversion table and pursuant to policy limitations not at issue here, the Insurers paid Mrs. Morris $12,593.62, including $4,705.39 for her medical expenses, which included the $1,200 cash payment to Dr. Mehra. The Insurers paid an additional $16,596.29 for Mr. Morris's air evacuation from Bombay to Texas. Mrs. Morris no longer disputes the amount of the Insurers' payments on her claims.
 
 
 13
 On May 2, 1996, Mrs. Morris filed a wrongful death claim against Princess and a claim of negligent misrepresentation against Consultants. She alleged that Princess failed to provide adequate care for Mr. Morris aboard the Island Princess; failed to arrange for Mr. Morris to be transferred to a proper medical facility; failed to maintain contact with the Morrises while they were in Bombay; failed to provide air transfer of Mr. Morris to Singapore as promised; and failed to have policies and procedures for proper health care and safe evacuation and subsequent care for passengers who become ill while in the "care and custody" of Princess. She alleged that Princess thereby breached its duty of care to Mr. Morris and that such breach was a proximate cause of his death. She also alleged that Consultants falsely represented that Princess Cruises was "a reputable cruise line and that passengers in their care would be safely and adequately served."
 
 
 14
 Princess and Consultants removed to the United States District Court for the Western District of Texas based on diversity jurisdiction, 28 U.S.C. 1332, federal question jurisdiction, 28 U.S.C. 1331, admiralty jurisdiction, 28 U.S.C. 1333, and the Death on the High Seas Act (DOHSA), 46 U.S.C. 761. Mrs. Morris brought a motion to remand, contending that the presence of Consultants, a citizen of Texas for purposes of diversity, defeated complete diversity; that admiralty claims filed in state court in the first instance are non-removable; and that DOHSA claims filed in state court are likewise non-removable because the DOHSA sounds in admiralty. Mrs. Morris submitted an affidavit along with her motion to remand in which she expressly maintained that neither she nor her husband at any time "discussed the quality or nature of medical care provided on board Princess Cruise Lines ships" with Consultants, as they were "both in perfect health and had no need for this information. " On March 26, 1997, the district court denied Mrs. Morris's motion to remand, concluding that Consultants was fraudulently joined and hence that the court had removal jurisdiction based on diversity of citizenship. On January 30, 1997, while her motion to remand was still pending, Mrs. Morris filed her unopposed First Amended Original Complaint, in which she joined the Insurers, stating claims against them for negligence, breach of contract, breach of the Texas Insurance Code, and violations of the Deceptive Trade Practices Act. On April 11, 1997, Mrs. Morris filed her Second Amended Complaint, in which she replaced her wrongful death claim against Princess with claims alleging negligence (based on the samealleged breaches as recited in her original state court complaint), gross negligence, breach of contract and breach of warranty. She also restated her previous claims against the other parties.
 
 
 15
 Pursuant to a forum selection clause contained in the Morrises' cruise tickets, venue was transferred to the Central District of California. On March 16, 1998, Consultants was dismissed from the action under Fed. R. Civ. Proc.S 12(b)(6) for failure to state a claim. On October 30, 1998, the District Court granted summary judgment for Princess and the Insurers on all claims.
 
 II
 
 16
 We must first decide whether the district court properly acquired and retained removal jurisdiction over this action.
 
 
 17
 * The district court held that it had removal jurisdiction based on diversity of citizenship. 28 U.S.C. 1332(a)(1). Section 1332 requires complete diversity of citizenship; each of the plaintiffs must be a citizen of a different state than each of the defendants. Caterpillar Inc. v. Lewis, 519 U.S. 61, 68 (1996). Nevertheless, one exception to the requirement of complete diversity is where a non-diverse defendant has been "fraudulently joined."
 
 
 18
 Fraudulent joinder, we have noted,"is a term of art." McCabe v. General Foods Corp., 811 F.2d 1336, 1339 (9th Cir. 1987). Joinder of a non-diverse defendant is deemed fraudulent, and the defendant's presence in the lawsuit is ignored for purposes of determining diversity, "[i]f the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state." Id. Further, the defendant "is entitled to present the facts showing the joinder to be fraudulent." Id. Because Consultants, like Mrs. Morris, is deemed a citizen of Texas for purposes of diversity jurisdiction, its presence in the lawsuit at the time of removal defeated diversity jurisdiction unless it was fraudulently joined.
 
 
 19
 Mrs. Morris sued Consultants for negligent misrepresentation. To state a claim for negligent misrepresentation under Texas law, the plaintiff must establish (1) the representation is made by a defendant in the course of his business; (2) the defendant supplies "false information" for the guidance ofothers in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation. Federal Land Bank Ass'n of Tyler v. Sloane, 825 S.W.2d 439, 442 (Tex. 1991). The "false information" supplied must be a misrepresentation of a "material fact." McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests, 991 S.W.2d 787, 794 (Tex. 1999). Mere sales-talk or "puffing" is not actionable. Prudential Ins. Co. of Am. v. Jefferson Assoc., Ltd., 896 S.W. 2d 156, 163 (Tex. 1995) (statements describing property to be "superb" or "super fine" were non-actionable puffing). Whether a statement is an actionable statement of "fact" or mere "puffing" depends upon a number of factors, including the statement's specificity, the speaker's knowledge, the comparative levels of the speaker's and the hearer's knowledge, and whether the statement relates to the present or the future. Transp. Ins. Co. v. Faircloth, 898 S.W.2d 269, 276 (Tex. 1995). We have noted that a "material fact" is one that would be likely to affect the conduct of a reasonable person with reference to the transaction in question. French v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 784 F.2d 902, 905-06 (9th Cir. 1986).
 
 
 20
 In her original state court complaint, Mrs. Morris alleged that Mr. Jay Silberman, owner of Consultants, recommended the Princess Holy Lands cruise to the Morrises and "represented that Princess Cruises, Inc . . . was a reputable cruise line and that passengers in their care would be safely and adequately served." Such an allegation fails to state a claim for negligent misrepresentation against Consultants and the failure is obvious according to settled law. Silberman's alleged statement is devoid of any meaningful specificity, amounting at most to a general recommendation of Princess akin to mere puffing. Further, the Morrises had sailed on Princess cruises in the past and were familiar with the services and amenities Princess offered; thus, they could not have reasonably relied upon such statement in any event. The obviously non-actionable nature of Silberman's statement is highlighted by Mrs. Morris's own affidavit that accompanied her motion to remand. Mrs. Morris specifically denied that she ever discussed "the quality or nature of medical care provided on board Princess Cruise Lines ships with Mr. Silberman." In light of Mrs. Morris's own admission, it is abundantly obvious that she could not possibly prevail on her negligent misrepresentation claim against Consultants. See Cavallini v. State Farm Mutual Auto Ins. Co., 44 F.3d 256, 263 (5th Cir. 1995) ("[F]raudulent joinder claims may be resolved by `piercing the pleadings' and considering summary judgment-type evidence such as affidavits and deposition testimony." (citations omitted)). Consultants's joinder as a defendant in this action was correctly ignored by the district court and removal was proper based on diversity of citizenship.
 
 B
 
 21
 We must next determine if the district court retained jurisdiction over this action. After the case was removed to federal court, and while her motion to remand was still pending, Mrs. Morris amended her complaint to join the Insurers as additional defendants. AIAS and National Union Fire Insurance Co. of Pittsburgh are, like Mrs. Morris, deemed citizens of Texas for purposes of diversity jurisdiction. Once removal has occurred, the district court has two options in dealing with an attempt to join a non-diverse party. 28 U.S.C. 1447(e) provides that "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." Newcombe v. Adolf Coors Co., 157 F.3d 686, 691 (9th Cir. 1998). Here, the district court did neither, permitting joinder of the non-diverse parties while retaining jurisdiction over the action. If diversity were the only basis for the court's subject matter jurisdiction, joinder of the non-diverse Insurers would have divested the court of jurisdiction. Desert Empire Bank v. Ins. Co. of N. Am., 623 F.2d 1371, 1374, 1377 (9th Cir. 1980) (permissive joinder of nondiverse defendant following removal to federal court divested court of subject matter jurisdiction).
 
 
 22
 The presence of the Insurers in this action destroyed the district court's diversity jurisdiction, but not its original subject matter jurisdiction. By failing to request a remand based on the joinder of the non-diverse Insurers, Mrs. Morris has waived whatever defect in the court's removal jurisdiction their presence in the action created. The Supreme Court has held that removal jurisdiction, unlike original subject matter jurisdiction, can, in fact, be waived. In Grubbs v. Gen. Elec. Credit Corp., 405 U.S. 699 (1972), the Court held that "where after removal a case is tried on the merits without objection and the federal court enters judgment, the issue in subsequent proceedings on appeal is not whether the case was properly removed, but whether the federal district court would have had original jurisdiction of the case had it been filed in that court." Id. at 702. The District Court's grant of summary judgment implicates the rule in Grubbs. See Local Union 598 v. J.A. Jones Constr. Co., 846 F.2d 1213, 1215 (9th Cir.1988) (Grubbs doctrine applies where a district court has entered summary judgment disposing of the merits of a case).
 
 
 23
 The district court would have had original jurisdiction over this case had it been brought initially in federal court because Mrs. Morris's claims against Princess would have invoked the court's admiralty jurisdiction.[1] Throughout the proceedings before the district court, Princess repeatedly submitted that federal maritime law provided the substantive law controlling Mrs. Morris's claims. Mrs. Morris did not, and indeed could not, argue otherwise. The district court specifically held that "federal maritime law governs this action," citing Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 628 (1959) (holding that federal maritime law applies to a claim for breach of duty to a passenger of a cruise ship sailing in navigable waters). In fact, the district court held that Mrs. Morris's breach of warranty claim based on California Commercial Code 2314-15 was preempted by federal maritime law. Mrs. Morris has not appealed this portion of the district court's ruling.
 
 
 24
 Because Mrs. Morris's claims against Princess arise under maritime law, they would have invoked the court's admiralty jurisdiction had she brought them originally in federal court. 28 U.S.C. 1333. Appellant's claims against the Insurers, assuming arguendo that they do not sound in admiralty, would have been properly before the court based on supplemental jurisdiction, as they form part of the same "case or controversy" involving Mrs. Morris's claims against Princess. 28 U.S.C. 1367(a).
 
 
 25
 Mrs. Morris, of course, instead brought her maritime claims in state court, as was her right under the "saving to suitors" clause of 28 U.S.C. 1333.[2] Courts have held that saving clause claims brought in state court are not removable under 28 U.S.C. 1441 absent some other jurisdictional basis, such as diversity or federal question jurisdiction. See Romero v. Int'l Terminal Operating Co., 358 U.S. 354, 371 (1959); Alleman v. Bunge Corp., 756 F.2d 344, 345-46 (5th Cir.1984). At the same time, courts have held that a state plaintiff may waive the improper removal of a savings clause claim. In Baris v. Sulpicio Lines, Inc., 932 F.2d 1540 (5th Cir. 1991), the Fifth Circuit held that the plaintiffs' failure to object to the removal of their saving clause claims due to lack of removal jurisdiction, e.g., lack of independent diversity or federal question jurisdiction, waived the objection under the Grubbs rule. See id. at 1543-45. The court reasoned that the federal court would have had original jurisdiction over the claim inthe first instance; only the removal proceedings, which "are in the nature of process," were defective. See id. at 1545 (quoting Mackay v. Uinta Dev. Co., 229 U.S. 173, 176 (1913)). See also In re Digicon Marine, Inc., 966 F.2d 158, 160 (5th Cir. 1992) (plaintiff waived improper removal of saving clause claim); Dao v. Knightsbridge Int'l Reinsurance Corp., 15 F. Supp. 2d 567, 572 (D.N.J. 1998) (same); Benjamin v. Natural Gas Pipeline Co. of Am., 793 F. Supp. 729, 732 (S.D.Tex. 1992) (same). Today, we follow the reasoning of the Fifth Circuit in holding that the district court's removal jurisdiction is not destroyed where the plaintiff fails to seek remand, pursuant to 28 U.S.C. 1447(e), of claims falling within the court's admiralty jurisdiction.[3]
 
 C
 
 26
 Because Consultants was fraudulently joined, removal was initially proper based on diversity. Mrs. Morris's subsequent joinder of the non-diverse Insurers thereupon defeated the court's diversity jurisdiction, but she failed to move for a remand on this basis. Because the district court would have had original jurisdiction over this action had Mrs. Morris filed suit in federal court in the first instance, her failure to move for remand pursuant to 28 U.S.C. 1447(e) upon joining the non-diverse defendants waived any possible objection to removal jurisdiction under Grubbs.
 
 III
 
 27
 We must next decide whether the district court properly granted Princess and the Insurers summary judgment on all claims.
 
 
 28
 * On appeal, Mrs. Morris contends that the district court improperly granted Princess summary judgment on her negligence claim. To recover for negligence, a plaintiff must establish: (1) duty; (2) breach; (3) causation; and (4) damages. Mrs. Morris has failed to provide any evidence that Princess's alleged breach of duty to the Morrises was the proximate cause of any legally cognizable damages that they suffered. W. Page Keeton et al., Prosser and Keeton on the Law of Torts 30, at 164-65 (5th ed. 1984).
 
 
 29
 Although Mrs. Morris's theory of the case has undergone considerable change since she first filed suit for wrongful death in 1996, she now contends that Princess, through Dr. Lewis, negligently surrendered her and her husband to Dr. Mehra and abandoned her in Bombay, thereby causing three discrete types of damage: (1) she had to pay $1,200 to Dr. Mehra to have her husband transferred to Breach Candy hospital; (2) she was assaulted at the Hotel Shalimar; and (3) she and her husband suffered emotional distress resulting from their harrowing ambulance ride and experience at the Aradhana facility.
 
 
 30
 None of these alleged bases supports Mrs. Morris's claim. The Insurers have already reimbursed Mrs. Morris for the $1,200 Dr. Mehra extorted from her. Her assault at the Hotel Shalimar by unknown assailants was not proximately caused by any alleged negligence on the part of Princess but by the intervening actions of third parties. Mrs. Morris does not allege that Princess arranged for her to stay there, nor does she claim that she asked Princess to make any other hotel arrangements for her. Finally, Princess cannot be responsible for the Morrises' emotional distress suffered at the hands of Dr. Mehra--to the extent that this could even constitute legally cognizable damage in the first place, which is doubtful. Mrs. Morris has adduced no evidence suggesting that either Princess or Dr. Lewis was negligent in relying on AEA or its chosen physician. By all accounts, AEA had a reputation as a quality emergency assistance provider. While Dr. Lewis allowed Mr. Morris to be transported in an inadequate ambulance, Dr. Lewis was informed that no other ambulance was available and Mrs. Morris has failed to adduce any facts rebutting this evidence. In short, Mrs. Morris has failed to adduce any evidence suggesting that any possible breach of duty on the part of Princess caused harm to the Morrises. Summary judgment for Princess on Mrs. Morris's negligence claim was, therefore, appropriate.[4]
 
 B
 
 31
 Mrs. Morris contends that the district court improperly dismissed on summary judgment her claims against the Insurers for breach of contract, breach of the Texas Insurance Code, and violations of the Deceptive Trade Practices Act. All three claims are premised on the notion that the Insurers did not give the Morrises the "benefit of the bargain" of the Policy and materially misrepresented the Policy's benefits.
 
 
 32
 It should be noted initially that Mrs. Morris does not dispute that the Insurers reimbursed her appropriately under the Policy for her various claims. Rather, she contends that the Insurers did not provide the type of emergency assistance care promised. In particular, Mrs. Morris claims that the $1,200 payment demanded by Dr. Mehra constituted a hospital admission fee which the Insurers were obligated to prepay under the Policy and that AIAS abandoned the Morrises in breach of the Policy's promised benefit of worldwide emergency assistance to help the insured find the nearest appropriate medical facility and accommodations. These claims are without merit.
 
 
 33
 With respect to Mrs. Morris's $1,200 payment to Dr. Mehra, even if this could be characterized as a hospital admission charge rather than as simple criminal extortion, there is no way that the Insurers could have prepaid this sum. Mrs. Morris, according to her own testimony, paid Dr. Mehra this sum immediately. She never asked the Insurers to prepay it. Instead, she requested, and received, reimbursement for this payment from the Insurers.
 
 
 34
 Further, AIAS was not responsible for the Morrises' ordeal at the hands of Dr. Mehra. AIAS's only involvement with the arrangements for Mr. Morris's evacuation from the ship was to guarantee payment of $25,000 for such evacuation, as provided under the Policy. AIAS did not assume, was not asked to assume, and was not obligated to assume responsibility for arranging Mr. Morris's evacuation from the ship. In fact, Dr. Lewis specifically instructed AIAS that AEA was in charge of such arrangements. In no way did the policy obligate AIAS to perform such service itself or to assume liability for the inadequate care the Morrises received from AEA. In fact, the Policy contained a caveat that specifically recited that the Insurers could not be responsible for the quality of medical services that the insured receives.
 
 
 35
 Finally, according to Mrs. Morris's own testimony, AIAS was in contact with Mrs. Morris and reserved her a room at the Hotel Shalimar. The fact that Mrs. Morris was assaulted at the hotel, without more, does not in any way demonstrate that AIAS failed to provide adequate emergency assistance. The record is bereft of any evidence suggesting that AIAS should have foreseen that Mrs. Morris might be assaulted at the hotel or was otherwise negligent in arranging for her stay there. As it was, AIAS monitored the Morrises' status in Bombay frequently, facilitated the transfer of funds from family members to Mrs. Morris, and arranged and paid for the Morrises' first class flight back to San Antonio with a medical escort. Mrs. Morris has failed to assert a single benefit under the Policy that she was entitled to, but did not, receive.
 
 IV
 
 36
 Although the Morrises suffered a harrowing experience in Bombay, Mrs. Morris has failed to adduce any genuine dispute of material fact suggesting that Princess or the Insurers are liable for any legally cognizable injury she suffered. Accordingly, the district court's judgment granting Princess and the Insurers summary judgment on all claims is
 
 
 37
 AFFIRMED.
 
 
 
 Notes:
 
 
 [1]
 Indeed, it is notable that throughout her opening and reply briefs, Mrs. Morris only contests the court's removal jurisdiction rather than the court's subject matter jurisdiction.
 
 
 [2]
 28 U.S.C. 1333 provides, in pertinent part, "The district courts shall have original jurisdiction, exclusive of the courts of the States, of: (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. 1333 (emphasis added).
 
 
 [3]
 We note that it is not at all clear whether Mrs. Morris would have been entitled to a remand pursuant to 1447(e) even if she had expressly sought it based on her joinder of the non-diverse defendants. Section 1447(e) suggests that remand is proper only if the court joins non-diverse defendants whose presence destroys the court's "subject matter jurisdiction," which is not the case here given that Mrs. Morris's claims against Princess would have invoked the court's admiralty jurisdiction. We need not reach this issue, as Mrs. Morris has waived it in any event.
 
 
 [4]
 In her opening brief, Mrs. Morris does not contest the district court's grant of summary judgment in favor of Princess on her other claims.