**Adam and Catherine BERTRAND, a married couple for themselves and on behalf of their son, a minor, Benjamin Cole Bertrand, Plaintiffs,**

v.

**AVENTIS PASTEUR LABORATORIES, INC. et al., Defendants.**

**No. CIV–01–2431–PHX–PGR.**

United States District Court,
D. Arizona.

Sept. 23, 2002.

John E. Osborne, Page Chancellor Axen, Goldberg & Osborne, Tucson, AZ, Melissa A. Miles, Charles S. Siegel, Tanja K. Martini, Waters & Kraus LLP, Dallas, TX, for Plaintiffs.

GinaMarie Rossano, Stephanie Vithoulkas, Snell & Wilmer LLP, Phoenix, AZ, Craig W. Phillips, Janell Marie Adams, Lewis & Roca LLP, Phoenix, AZ, Stepehn L. Urbanczyk, F. Lane Heard, Williams & Connolly LLP, Washington, DC, for Defendants.

## ORDER

ROSENBLATT, District Judge.

Plaintiffs, Adam and Catherine Bertrand, filed this action on behalf of themselves and their son, Benjamin Bertrand (Ben), for neurological injuries allegedly resulting from vaccine injections. Pending before this Court are plaintiffs' Motion to Remand (docs. 17 & 19) and Motion for Costs (doc. 17–2).

### BACKGROUND

Plaintiffs are the parents of Ben Bertrand, who is four years old. Ben was born healthy and developed normally for about fourteen months. Within a few weeks of his fourteen month "well baby" check up, Ben stopped talking, playing, and avoided eye contact. By eighteen months his development had changed dramatically for the worse.

Ultimately, toxic metal screening tests showed that Ben suffered from mercury toxicity. Plaintiffs allege that he was exposed to the mercury through the mercury-based preservative, Thimerosal, which had been added to several of the sixteen pediatric vaccine injections he received between birth and fourteen months of age.

On November 13, 2001, plaintiffs filed a Complaint in Maricopa County Superior Court. The Complaint alleges five causes of action: (1) strict products liability; (2) breach of warranty; (3) negligence; (4) consumer fraud; and (5) battery. Plaintiffs named various vaccine manufacturers and Ben's healthcare providers as defendants.

On December 13, 2001, defendant Aventis Pasteur ("Aventis") removed the action on the basis of federal question and diversity jurisdiction pursuant to 28 U.S.C. 1441(b) and (c).[1] Plaintiffs filed this Motion to Remand on January 14, 2002. Defendants argue that removal was appropriate because the National Childhood Vaccine Injury Act of 1986 (the "Vaccine Act"), a federal statute, presents a federal question. With respect to diversity, defendants claim that Ben's healthcare providers are "sham defendants" fraudulently named in an effort to break diversity. Thus, if the "sham defendants" are dismissed then diversity exists.

### DISCUSSION

#### A. The Vaccine Act

The Vaccine Act sets forth a method for compensation for vaccine-related injuries or death. 42 U.S.C. § 300aa–11. Congress enacted the Vaccine Act to streamline the process of seeking compensation for vaccine-related injuries and to avoid the inconsistency, expense, and unpredictability of the tort system. *See Shalala v. Whitecotton,* 514 U.S. 268, 270, 115 S.Ct. 1477, 1478, 131 L.Ed.2d 374 (1995) ("For injuries and death traceable to vaccinations, the Act establishes a scheme of recovery designed to work faster and with greater ease than the civil tort system").

The Vaccine Act specifically prevents plaintiffs from initiating lawsuits against vaccine administrators or manufacturers in state or federal court for unspecified amounts of damages unless they first file a timely petition in the Court of Federal Claims. 42 U.S.C. § 300aa–11(a)(2)(A). Petitions filed in the Court of Federal Claims are assigned to a special master familiar with Vaccine Act litigation. 42 U.S.C. § 300aa–11 & 300aa–12(d). The Vaccine Act specifically directs courts to dismiss causes of action that were not first filed in the Court of Federal Claims. 42 U.S.C. § 300aa–11(a)(2)(B). After proceeding through the Court of Federal Claims, a claimant may pursue a civil tort action in either state or federal court. 42 U.S.C. § 300aa–21(a).

1. The Court notes that all defendants collectively responded to the Motion to Remand.

### B. Removal

■ Removal is a procedure created by federal statute that permits defendants in state court lawsuits to remove the case to federal court if the plaintiff's action could have been properly filed in federal court. The statutes related to removal are to be strictly construed. *See Salveson v. Western States Bankcard Ass'n,* 731 F.2d 1423, 1426 (9th Cir.1984). The defendant's right to remove and the plaintiff's right to choose the forum are not equal, and uncertainties are resolved in favor of remand. *See Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir.1979) (holding federal question jurisdiction must be rejected when any doubts exist as to initial removal rights).

Section 1441 presents four essential elements for determining whether removal is proper: (1) only a civil action brought in state court may be removed; (2) the civil action must be one which the district courts of the United States have original jurisdiction; (3) only the defendant, or defendants, may remove; and (4) the action must be removed to the district court for the district and division embracing the state court action. 28 U.S.C. § 1441. At issue in the pending case is the second element—whether this Court has original jurisdiction.

As an initial matter, the Court notes that it is unable to find any binding precedent dealing with the specific issue before this Court. Moreover, while the parties have provided several cases and secondary source material for the Court's review, none of them address Ninth Circuit or Arizona law. This appears to be a case of first impression for this jurisdiction.

### C. Federal Question Jurisdiction

■ Defendants argue that federal question jurisdiction exists because the Vaccine Act governs plaintiffs' Complaint. The presence or absence of federal question jurisdiction is governed by the "well-pleaded complaint rule," which provides that federal question jurisdiction exists only if a federal question is affirmatively and distinctly presented on the face of the plaintiff's properly pled complaint. *See Rivet v. Regions Bank of Louisiana,* 522 U.S. 470, 475, 118 S.Ct. 921, 925, 139 L.Ed.2d 912 (1998); *see also Caterpillar Inc., v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987). This rule permits plaintiff to avoid federal jurisdiction by forgoing a potential federal claim and relying exclusively on state law, unless the state claims are completely preempted. *See Rivet,* 522 U.S. at 475, 118 S.Ct. at 925; *see also Merrell Dow Pharmaceuticals, Inc. v. Thompson,* 478 U.S. 804, 809 n. 6, 106 S.Ct. 3229, 3233, n. 6, 92 L.Ed.2d 650 (1986) ("Jurisdiction may not be sustained on a theory that the plaintiff has not advanced").

■ A defense is not part of a plaintiff's properly pled statement of his or her claim. *See Rivet,* 522 U.S. at 475, 118 S.Ct. at 925; *see also Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987); *Gully v. First Nat. Bank in Meridian,* 299 U.S. 109, 57 S.Ct. 96, 97 (1936). Therefore, "a case may not be removed to federal court on the basis of a federal defense, . . . even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case." *Rivet,* 522 U.S. at 475, 118 S.Ct. at 925, (quoting, *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal.,* 463 U.S. at 14, 103 S.Ct. at 2848).

■ However, an "independent collorary" to the well-pled complaint rule is that "a plaintiff may not defeat removal by omitting to plead necessary federal questions." *Rivet,* 522 U.S. at 475, 118 S.Ct. at 925. Should this Court determine that plaintiff artfully pled claims in this way, it

may uphold removal even though no federal question appears on the face of the complaint. *See id.*

■■■ Defendants contend that the Vaccine Act is a procedural bar to plaintiffs' claims, not a defense. Plaintiffs disagree. Under the facts presented, whether the Vaccine Act is a procedural bar or defense is a distinction without a difference. The artful pleading doctrine permits removal only where federal law *completely* preempts a plaintiff's state law claim. *See Rivet*, 522 U.S. at 475, 118 S.Ct. at 925. (Emphasis added); *see also Metropolitan Life Ins. Co.*, 481 U.S. at 65–66, 107 S.Ct. at 1547–48. (upholding removal based on the preemptive effect of § 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974); *Avco Corp. v. Aero Lodge No. 735, Intern. Ass'n of Machinists*, 390 U.S. 557, 560, 88 S.Ct. 1235, 1237, 20 L.Ed.2d 126 (1968). Typically federal preemption is considered a defense, but "[o]nce an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law claim is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar*, 482 U.S. at 393, 107 S.Ct. at 2430. Accordingly, to conclude a federal question exists, this Court must first determine whether the Vaccine Act completely preempts any state law claims. *See id.*

■ Congress could have created an exclusive federal remedy for vaccine-related injuries or death when it enacted the Vaccine Act. Instead, however, it supplemented state tort remedies with the requirement that claims first be exhausted in the Court of Federal Claims prior to pursuing litigation in state court. 42 U.S.C. § 300aa–11(a)(2)(A); 42 U.S.C. § 300aa–21(a). Thus, Congress recognized that a state court would likely have to apply federal law in considering whether a vaccine-related claim is covered by the Vaccine Act. Accordingly, this Court cannot conclude that the Vaccine Act *completely preempts* state law in this area. *See Rivet*, 522 U.S. at 475, 118 S.Ct. at 925 (emphasis added); *see also Metropolitan Life Ins. Co.*, 481 U.S. at 65–66, 107 S.Ct. at 1547–48.

That plaintiffs' state law claims implicate issues under the Vaccine Act does not require the Court to find federal question jurisdiction exists. This Court recognizes that plaintiffs' failure to file a petition to exhaust at the Court of Federal Claims may ultimately result in the dismissal of all or portions of the Complaint. However, pending before this Court is a Motion to Remand, not a Motion to Dismiss. Because there is not complete preemption, the state court is the appropriate body to address exhaustion and assess the merits of plaintiffs' case.

Defendants also contend that because plaintiffs' Complaint states that the FDA approved warnings were inadequate, a federal question necessarily exists. Essentially, defendants argue that as a matter of law, FDA approved warnings are considered adequate. Thus, in implicating the FDA approved warnings a federal question is raised. This argument was raised for the first time at oral argument. It was not raised in the Notice of Removal or the opposition to the Motion to Remand. Because the matter was not briefed by defendant, plaintiff did not have an adequate opportunity to reply. Therefore, the Court will not consider the issue in its analysis.

■ In addition, defendants argue that federal question jurisdiction exists because the Complaint raises substantial federal issues. While there are certainly federal issues to be addressed, they are not of such a substantial nature as to establish federal question jurisdiction. As noted above, Congress clearly anticipated actions

covered under the Vaccine Act may be heard in state court, following exhaustion at the Federal Court of Claims. The federal issues raised were certainly not substantial enough for Congress to completely preempt any state law.

### D. Diversity Jurisdiction

For removal of an action from state court to be valid based on diversity jurisdiction, the action must be between the citizens of different states and the amount in controversy must exceed $75,000.00. 28 U.S.C. § 1332. Diversity jurisdiction requires complete diversity; meaning, every plaintiff must be diverse from every defendant. 28 U.S.C. § 1332.

 Defendants argue that diversity exists because the doctor defendants are "sham" defendants such that the Court should consider them fraudulently joined. Fraudulent joinder occurs when a nondiverse party is added solely to deprive the federal courts of jurisdiction. See Ritchey v. Upjohn Drug Co., 139 F.3d 1313, 1318 (9th Cir.1998). A claim of fraudulent joinder must be pled with particularity and supported by clear and convincing evidence. See B., Inc. v. Miller Brewing Co., 663 F.2d 545, 550 (5th Cir.1981). The party alleging fraudulent joinder bears the burden of proving the alleged fraud. See Pampillonia v. RJR Nabisco, 138 F.3d 459, 461 (2nd Cir.1998); see also Jernigan v. Ashland Oil Co., 989 F.2d 812, 815–16 (5th Cir.1993); Boyer v. Snap–On Tools Corp., 913 F.2d 108, 111 (3rd Cir.1990). In ruling on removal based on fraudulent joinder, the district court is obligated to evaluate all of the factual allegations in the light most favorable to the plaintiff. See id. In addition, any uncertainties as to the current state of controlling substantive law must also be resolved in favor of plaintiff

and against the defendant. See Dodson v. Spiliada Maritime Corp., 951 F.2d 40, 42–43 (5th Cir.1992).

 To establish that an instate defendant has been fraudulently joined, the removing party must show either that (1) there is no possibility that the plaintiff would be able to establish a cause of action against the instate defendant in state court, or (2) there is an outright fraud contained in the plaintiff's pleading of jurisdictional facts. See Ritchey, 139 F.3d at 1318. At issue in this case is whether a cause of action can be asserted against the doctor defendants.

The ultimate question is whether there is a reasonable basis for predicting that state law might impose liability on the doctor defendants. If that possibility exists, a good faith assertion of this expectancy in state court is not a sham and is not fraudulent in law or fact.

In this case, the doctor defendants are citizens of the State of Arizona, and thus are not diverse from plaintiffs, who are also citizens of Arizona. Without these doctor defendants, complete diversity would exist between the parties to this action, and this Court would have diversity jurisdiction.

Defendants assert two arguments to support their position that the doctor defendants were fraudulently joined.[2] First, they claim that "the doctor defendants are sham defendants because the Vaccine Act requires dismissal for a civil action when no petition has been filed in the Vaccine Court." Second, defendants contend plaintiffs are unable to state a cause of action against the doctor defendants under Arizona law.

---

**2.** The Court notes that defendants primarily rely on arguments more suitable to a Motion

to Dismiss rather than a Motion to Remand.

## A. Applicability of the Vaccine Act

Defendants maintain there is no possibility that plaintiffs can state a claim against the doctor defendants because the Vaccine Act requires them to first file claims for vaccine-related injuries in the Court of Federal Claims. Plaintiffs however, contend that the Vaccine Act does not apply in this case for two reasons. First, they maintain that Thimerosal is an "adulterant" or "contaminant" and thus, specifically exempt from the Vaccine Act. 42 U.S.C. § 300aa–33(5). Second, they argue that the Vaccine Act only applies to those directly injured as a result of a vaccine, and not those filing suit in a representative capacity. Thus, Ben's parents, suing on behalf of themselves, are specifically prevented from seeking damages under the Vaccine Act.

### a. Thimerosal as an Adulterant or Contaminant

The term vaccine-related injury "does not include an illness, injury, condition or death associated with an adulterant or contaminant intentionally added to a vaccine." 42 U.S.C. § 300aa–33(5). The terms "adulterant" or "contaminant" are not specifically defined by the Vaccine Act. Plaintiffs rely on medical dictionary definitions of adulterant to argue that Thimerosal, when used as a component of a vaccine is an "adulterant" or "contaminant." Defendants, on the other hand, argue that Thimerosal is used as an FDA approved preservative in vaccines, to prevent bacterial contaminants from weakening or debasing vaccines, and is thus the opposite of an adulterant.

The weight of authority supports defendants' position. It appears that every federal court to have ruled on the issue has held that injuries resulting from Thimerosal contained in vaccines are vaccine-related under the meaning of the Act. See Liu v. Aventis Pasteur, 219 F.Supp.2d 762 (W.D.Tex.2002) (holding the injuries were vaccine related in a motion to dismiss); Owens v. Am. Home Prods. Corp., 203 F.Supp.2d 748 (S.D.Tex.2002); see also McDonald v. Abbott Labs, 02–77 (S.D.Miss. Aug. 1, 2002); Collins v. Am. Home Prods. Corp., 01–979 (S.D.Miss. Aug. 1, 2002); Stewart v. Am. Home Prods. Corp., 02–427 (S.D.Miss. Aug. 1 2002) (denying motion to remand and granting motion to dismiss); Strauss v. American Home Prod. Corp., 208 F.Supp.2d 711 (S.D.Tex.2002) (finding injuries from Thimerosal are "vaccine-related" under the Vaccine Act); Blackmon v. American Home Prod. Corp., Cause No. G–02–179 (S.D.Tex. May 8, 2002) (same); Owens v. American Home Prod. Corp., 203 F.Supp.2d 748 (S.D.Tex.2002) (same). Additionally, the Department of Health and Human Services has taken the position that Thimerosal is not an adulterant or contaminant of vaccines.

This Court need not determine whether Thimerosal is an adulterant or contaminant. Doing so would go beyond plaintiffs' Complaint and assess potential defenses. See King v. Aventis Pasteur, 210 F.Supp.2d 1201, 1210 (D.Or.2002). This Court is obligated to evaluate remand based on the following standard: When a removing defendant alleges the district court has diversity jurisdiction on the basis of fraudulent joinder, "the federal court first adopts a strict presumption against removal, and then asks whether there is an 'any chance' that a state court would find a viable cause of action." Salveson, 731 F.2d at 1426, quoted in, King, 210 F.Supp.2d. at 1210. In asserting this argument, defendants essentially request this court ignore this standard in favor of the standard used in a motion to dismiss. See King, 210 F.Supp.2d at 1210. On this basis, defendants have failed to establish diversity jurisdiction.

### b. The Vaccine Act's Applicability to Ben's Parents

 Assuming the Vaccine Act encompasses Thimerosal, the Act only applies to persons who have sustained a vaccine-related injury or death. 42 U.S.C. § 300aa–11(a)(9). In fact, compensation for injuries to family members are specifically exempt from the Act. "Compensation awarded ... may not include ... compensation for other than the health, education, or welfare of the person who suffered the vaccine related injury with respect to which the compensation is paid." 42 U.S.C. § 300aa–15(d)(2). Accordingly, under the Vaccine Act, the parents of an injured child are not permitted to file a petition except in a representative capacity. 42 U.S.C. § 300aa–11(b)(1)(A); *see also Schafer v. American Cyanamid,* 20 F.3d 1, 5, (1st Cir.1994); *Head v. Secretary of Health and Human Serv.,* 26 Cl.Ct. 546 n. 1 (1992).

Here, the plaintiffs filed the Complaint for "themselves and on behalf of" their son. The claims of Adam and Catherine Bertrand for their own injuries, as parents of the injured child, are not covered by the Vaccine Act. Therefore, Ben's parents have no means of compensation for their own damages under the Vaccine Act and must rely on state claims. Accordingly, state causes of action may reasonably exist against the doctor defendants.

### 2. Failure to State a Claim under Arizona Law

Additionally, defendants maintain there is no possibility plaintiffs can state claims against the doctor defendants under Arizona law. In support of this theory, defendants reason that the Arizona Medical Malpractice Act (Malpractice Act) "bars"

plaintiffs from "pursuing claims against doctors for products liability and breach of warranty."

The Malpractice Act simply requires that a claim which is described by the Act's definition of "malpractice" falls under the Malpractice Act and be governed by its provisions, regardless of whether or not the plaintiff labeled the claim "malpractice."

Plaintiffs acknowledge that whether the doctor defendants' failure to warn about the dangers of Thimerosal amount to a "malpractice" claim are, in fact, arguable. However, plaintiffs correctly point out that such allegations "[a]rguably do amount to a 'malpractice' as that term is defined under the [Malpractice] Act, and, as a result, such a claim arguably falls under the [Malpractice] Act." That a claim may fall under the Malpractice Act, however, does not necessarily mean that such a claim is barred by it.

Second, plaintiffs recognize breach of warranty claim does not fall under the Malpractice Act because it is not a "malpractice claim" as defined by the statute.[3] Defendants, on the other hand, argue that because the breach of warranty claim does not fall into the definition of malpractice no cause of action exists.

 In order to establish fraudulent joinder on this basis, defendants must show that the cause of action is absent "according to the settled rules of the state." *See Morris v. Princess Cruises, Inc.,* 236 F.3d 1061, 1067 (9th Cir.2001). Defendants have failed to sustain their burden in this regard. Defendants have not cited any Arizona authority holding that a breach of warranty claim cannot be

---

**3.** [A]n action for injury or death against a licensed healthcare provider based upon such provider's alleged negligence, misconduct, errors or omission, or breach of contract in the rendering of health care, medical services, nursing services or other health related services, without express or implied consent ... Ariz.Rev.Stat. § 12–561(2).

asserted against a doctor or corporate healthcare provider. While it is likely that an Arizona court may not permit a breach of warranty cause of action under these circumstances, this Court is obligated to decide the matter based upon well "settled rules of the state." *See id.* Defendants have a rather high burden to overcome before this Court can determine that fraudulent joinder renders the case removable and defendants have not overcome this burden.

### E. Attorneys' Fees

Plaintiffs request this Court grant them attorneys' fees and costs associated with their Motion to Remand. Under 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorneys' fees, incurred as a result of the removal." The Court, however, may refuse to award plaintiff fees and costs when the defendant had a legitimate or colorable legal ground for removal or when remand was based on procedural defects. *See Teitelbaum v. Soloski,* 843 F.Supp. 614, 616 (C.D.Cal.1994).

Plaintiffs Motion merely requested fees and costs. It did not provide any argument as to why fees and costs would be appropriate under the circumstances presented. Accordingly, plaintiffs' Motion for Fees and Costs is denied without prejudice. Plaintiff may refile the Motion specifically addressing the merits of the issue and provide the Court with a Statement of Costs at that time.

### CONCLUSION

In reviewing the relevant authority governing the Vaccine Act as it relates to both federal question and diversity jurisdiction, this Court concludes that remanding the matter to state court is appropriate. There is no federal question jurisdiction because the Vaccine Act does not completely preempt state law. Moreover, the Court cannot conclude that the doctor defendants were fraudulently named in an effort to break diversity.

IT IS ORDERED that plaintiff's Motion to Remand (**docs. 17 & 19**) is GRANTED.

IT IS FURTHER ORDERED that plaintiff's Motion for Costs (**doc. 17–2**) is DENIED without prejudice.

IT IS FURTHER ORDERED that plaintiffs shall refile their Motion for Fees and Costs on or before **October 15, 2002.** Defendants may then file a response. No reply will be permitted.

IT IS FURTHER ORDERED that the Clerk of Court is to remand this matter to state court for further adjudication. This Court will retain jurisdiction as to the award of fees and costs.